## FREDERICK VIETOR & ACHELIS et al. v. SALT'S TEXTILE MFG. CO.

District Court, D. Connecticut. January 20, 1928.

On Petition for Reargument, February 14, 1928.

No. 1848.

**1. Internal revenue** ⊚⟿7(22), 9(27)—**Corporation doing business in France held entitled to deduction from gross income for losses from shrinkage in French assets in terms of dollars because of continued depreciation in value of franc.**

An American manufacturing corporation owning and operating a branch factory in France, *held* entitled to deduction from gross income for loss from shrinkage in value of its French assets in terms of dollars, by reason of depreciation in value of the franc during the year.

On Petition for Reargument.

**2. Internal revenue** ⊚⟿7(20), 9(27)—**Corporation held entitled to deduct income taxes paid in foreign country, notwithstanding actual loss suffered by depreciation of franc rendered impossible satisfactory showing of income (Revenue Act 1918, § 234 [a], par 3, [d], and § 238 [b], being Comp. St. §§ 6336⅛pp, 6336⅛rr).**

Revenue Act 1918, § 238 (b), being Comp. St. § 6336⅛rr, allowing credit to a domestic corporation for taxes paid to a foreign country on income derived from sources therein, but only if it furnishes evidence showing the amount of such income, does not permit a corporation to claim the credit for income tax paid the government of France on business done therein which showed a profit in francs, but because of the continued depreciation in value of the franc during the year was in fact done at a loss when measured in terms of dollars, but such income tax may be allowed as deduction under Revenue Act 1918, § 234 (a), par. 3 (d), being Comp. St. § 6336⅛pp.

**3. Internal revenue** ⊚⟿7(22), 9(27)—**Shrinkage during tax year in value of fund, before segregated for financing subsidiary corporation through depreciation of franc, held deductible from gross income.**

An American corporation doing business in France, which purchased and set aside a fund of 750,000 francs to finance a contemplated subsidiary corporation, *held* entitled to deduction from gross income for shrinkage in value of the fund during the tax year in terms of dollars through depreciation of the franc between time of purchase and time fund was segregated.

In Equity. Suit by Frederick Vietor & Achelis and others against the Salt's Textile Manufacturing Company. On petition of receiver for adjudication of claim of United States for internal revenue taxes. Decree as directed.

Henry F. Parmelee, of New Haven, Conn. (John S. Pullman, of Bridgeport, Conn., and Avery Tompkins, of New Haven, Conn., of counsel), for receiver.

26 F.(2d)—16½

C. M. Charest and Rudolph P. Hertzog, both of Washington, D. C., and John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn., for the United States.

THOMAS, District Judge. The receiver, appointed in a suit pending in this court for the conservation of the defendant's assets, petitions this court for the adjudication of a claim made by the United States for additional income and excess profits taxes assessed against the defendant for the year 1919, in accordance with the provisions of section 282 (a) of the Revenue Act of 1926 (26 USCA § 1071 [a]), under which statute claims for deficiencies, additional amounts, and additions to the tax may be presented to the court before which the receivership proceeding is pending for adjudication. It is well settled that the court, in this proceeding, must determine any question which arises as to the amount or legality of the taxes, and that we are not concluded by the findings of the taxing authorities as to questions of fact or law. Jurisdiction to adjudicate the legality and amount of tax, if any, is complete. In re Sheinman (D. C.) 14 F.(2d) 323; In re Williams Oil Co. (D. C.) 265 F. 401; New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284. The United States joins in the proceeding and prays for a direction to the receiver to pay the tax substantially as assessed.

The material facts are not in dispute. By a stipulation entered into between the receiver and the United States it was agreed as follows:

"(1) That the deficiency claimed in the sum of $318,381.54 includes the equivalent of the sum of $30,004.97 which the Commissioner of Internal Revenue has disallowed as a credit, the said sum of $30,004.97 representing the amount of foreign income and profits taxes paid to the French Republic for the year ending December 31, 1919, assessed against the French business of the Salt's Textile Manufacturing Company, conducted in France, as will hereinafter appear. The said sum of $318,381.54, with interest as provided by law, is conceded to be the amount in controversy, subject to the determination of the issues herein.

"(2) Salt's Textile Manufacturing Company is, and was during 1919 and prior and subsequent thereto, a Connecticut corporation engaged in the manufacture of textiles in Bridgeport, where its principal factory and home office were and are. It is now being operated by a receiver, appointed by this court in this cause on April 23, 1926.

"(3) Salt's Textile Manufacturing Company, prior to and during 1919, owned and operated factories for the manufacture and treatment of fabrics in France, and there manufactured and sold fabrics, without a separate corporate organization or subsidiary corporation.

"(4) In 1919, and during a number of years prior thereto, Salt's Textile Manufacturing Company operated a weaving mill at Lyons and a dyehouse at St. Juste-sur-Loire. In 1919, Salt's Textile Manufacturing Company manufactured in France and sold in Europe a quantity of goods amounting to approximately one-twentieth of the quantity of goods manufactured by it in Bridgeport. The Salt's Textile Manufacturing Company bought and used foreign exchange in connection with and as an incident to its principal business, during 1919 and prior thereto, and conducted its business in France as an aid to its domestic business and for the purpose of the manufacture and sale of its products. All its transactions in foreign exchange were incidental to its principal business.

"(5) French, British, and German exchange declined in terms of dollars during 1919. During this period·and subsequently the United States dollar remained at a parity with gold. The current rate of exchange of the French franc declined from 5.44⅞ francs to the dollar on December 31, 1918, to 10.85 francs to the dollar on December 31, 1919. The current rate of British exchange on December 31, 1919, was $3.765 to the pound sterling, while the current rate of German exchange on that date was .0203 cents to the mark.

"(6) Salt's Textile Manufacturing Company in an amended return disclosed its net income for 1919 as $2,355,212.74, the computation of such net income as returned incorporating as a loss the result of using the rate of exchange as at December 31, 1919 (and as to one transaction as at September 8, 1919), in valuing its current assets in France, Germany, and England in dollars, as shown in more detail in paragraphs 10, 11, and 12.

"(7) The returns filed by the Salt's Textile Manufacturing Company were consolidated returns, which included the operations of the Salt's Textile Company, Incorporated, of New York, and the Griswold Worsted Company, both of which were affiliated with the Salt's Textile Manufacturing Company by reason of stock ownership.

"(8) Defendant had paid $635,429.25 assessed on basis of original return and showing net income of $2,134,725. The amended return admitted a tax liability of $708,930.78. In report of October 24, 1924, the Commissioner increased invested capital by about $47,000. The receiver concedes that the difference between the alleged tax, as corrected by the increase of invested capital to $706,544.30 and $635,429.25, the amount of tax heretofore paid, viz. $71,115.05, is assessable and unpaid.

"(9) A copy of statement annexed to and a part of the Commissioner's deficiency letter of June 28, 1926, claiming a deficiency of $318,381.54, is hereto annexed and marked Exhibit A:

Exhibit A.

Statement Annexed to Deficiency Letter of June 28, 1926.

IT:CR:E-60D
EMN

Statement of Returns Examined and Resulting Tax Liability.

Returns Examined.

| Company. | Year. | Form. |
|---|---|---|
| Salt's Textile Manufacturing Company, Bridgeport, Connecticut.... | 1919 | 1120 |
|  | 1920 | 1120 |
| Salt's Textile Company, Incorporated, New York, New York...... | 1919 | 1122 |
|  | 1920 | 1122 |
| Griswold Worsted Company, Darby, Pennsylvania ................ | 1919 | 1122 |
|  | 1920 | 1122 |

Tax Liability.

| Company. | Year. | Deficiency. |
|---|---|---|
| Salt's Textile Manufacturing Company, Bridgeport, Connecticut.... | 1919 | $318,381.54 |
|  | 1920 | None |
| Salt's Textile Company, Incorporated, New York, New York...... | 1919 | None |
|  | 1920 | None |
| Griswold Worsted Company, Darby, Pennsylvania ................ | 1919 | None |
|  | 1920 | None |

Waivers which will expire December 31, 1926, are on file for the years 1919 and 1920.

The right of appeal as set forth herein applies only to those years in which there is a deficiency of tax as defined by section 273 of the Revenue Act of 1924.

A carbon of this letter has been mailed to Price, Waterhouse & Co., in accordance with the authorization contained in your power of attorney, dated October 12, 1923, running to them, which is on file in this office.

Salt's Textile Manufacturing Company.

Year Ended December 31, 1919.

Schedule 1.

Net Income.

| | |
|---|---|
| Net income as disclosed by Bureau letter dated October 24, 1924................... | $2,842,859 41 |
| As corrected ............................ | 2,829,841 93 |
| Net deductions ......................... $ | 13,017 48 |
| Deductions: | |
| (a) Taxes .............................. $ | 13,017 48 |
| Net deduction as above................... | 13,017 48 |

### Explanation of Item Changed.

(a) Accruals of actual taxes to be paid are now allowed as deductions in accordance with the explanation furnished by you in the conference held in this office.

### Schedule 2.

#### Computation of Tax, 1919 Rates.

| | |
|---|---|
| Net income, schedule 1 | $2,829,841 93 |
| Invested capital, schedule 3, Bureau letter dated October 24, 1924 | 6,886,807 28 |
| 8 per cent. of invested capital | 550,944 58 |
| Plus exemption, $3,000.00 | 3,000 00 |
| Total credit | $553,944 58 |

### Schedule 3.

#### Computation of Tax, 1919 Rates.

| | Income. | Credit. | Taxable. | Rate. | Tax. |
|---|---|---|---|---|---|
| 20 per cent. | $1,377,361.46 | $553,944.58 | $ 823,416.88 | 20 | $164,683.38 |
| Balance | 1,452,480.47 | | 1,452,480.47 | 40 | 580,992.19 |
| Total | $2,829,841.93 | $553,944.58 | $2,275,897.35 | | $745,675.57 |

#### Income Tax.

| | | |
|---|---|---|
| Net income taxable year | | $2,829,841 93 |
| Less: Interest, United States obligations not exempt | 814 20 | |
| Excess profits tax | 745,675 57 | |
| Exemption | 2,000 00 | |
| Balance taxable at 10 per cent. | | $2,081,352 16 |
| Income tax | | $208,135 22 |
| Total income and excess profits tax | | 953,810 79 |
| Previously assessed, Account No. 407,401, June, 1920 | | 635,429 25 |
| Additional to be assessed | | 318,381 54 |

A copy of statement annexed to and a part of the Commissioner's deficiency letter of October 24, 1924, claiming a deficiency of $294,364.35, is hereto annexed and marked Exhibit B:

### Exhibit B.

Statement of Returned, Examined and Resulting Tax Liability.

#### Returns Examined.

| Company. | Year. | Form. |
|---|---|---|
| The Salt's Textile Manufacturing Company | 1919 | 1120 Original |
| | 1920 | 1120 Amended |
| | | 1120 |

#### Tax Liability.

| Year. | Additional Tax. |
|---|---|
| 1919 | $294,364.35 |
| 1920 | None |

The results indicated above are based upon an audit of the returns listed in connection with an examination thereof made by a travel auditor of Consolidated Returns Audit Division.

Full details of the Adjustments producing the above-stated results are contained in the attached schedules 1 to 7.

### Salt's Textile Manufacturing Company.

Year Ended December 31, 1919.

#### Schedule 1.

##### Consolidated Net Income.

| | | |
|---|---|---|
| Net income as disclosed by amended return | | $2,355,212 74 |
| As corrected | | 2,842,859 41 |
| Additions | | $ 487,646 67 |

Additions:

| | | |
|---|---|---|
| (a) Exchange loss on French branches | $268,956 57 | |
| (b) Losses computed at exchange rates as at December 31, 1919, on balances abroad | 71,136 95 | |
| (c) Losses through decline in French exchange in Salt's Textile Company of France | 55,144 26 | |
| (d) Increase in tax reserve | 13,719 66 | |
| (e) Profits on Lyons branch | 78,689 23 | $ 487,646 67 |
| Total additions | | $ 487,646 67 |

#### Schedule 2.

##### Explanation of Items Changed.

(a) As this amount is due to a computation of the value of the assets at the current rate of exchange at the end of the year, it is not deductible for income tax purposes.

A loss on assets cannot be allowed until they are disposed of.

(b) The information submitted is insufficient to prove this amount an allowable deduction.

(c) It appears that Salt's Textile Company of France was not incorporated until 1920. A loss on assets cannot be taken until they are disposed of.

(d) Reserves to take care of estimated taxes are not allowable deductions from gross income.

(e) The amount actually earned by the foreign branch is taxable income for the year. The income is computed as follows:

| | |
|---|---|
| Profit for 13 months ended December 31, 1919, as shown by Exhibit B of report of Price, Waterhouse & Co. dated October 6, 1920 | 445557.70 francs |
| P. Williams commission | 122800.75 francs |
| Interest on capital account | 35200.80 francs |
| Interest on Bridgeport current account | 321367.20 francs |
| | 924926.45 francs |
| Applicable to 1919(12/13) | 853778.25 francs |
| Profit expressed in dollars, 853778.25 divided by 10.85 (rate of exchange as at December 31, 1919) | $78,689 23 |

#### Schedule 3.

##### Consolidated Invested Capital, 1919.

| | | |
|---|---|---|
| As reported on amended return | | $6,839,501 09 |
| As corrected | | 6,886,807 28 |
| Net increase as explained below | | $ 47,306 19 |

Increases:

| | | |
|---|---|---|
| (a) Reserve bad debts | $ 1,998 25 | |
| (b) Reserve state taxes | 12,000.00 | |
| (c) Reserve for dividends | 9,565 61 | |
| (d) Lyons controlling account | 37,447 78 | |
| Total increase | | $ 61,011 64 |

Decreases:

| | | |
|---|---|---|
| (e) Surplus at acquisition of Griswold Worsted Company | $2,453 33 | |
| (f) 1918 income tax | 4,782 42 | |
| (g) 1917 income tax | 6,164 99 | |
| (h) Inadmissibles | 304 71 | |
| Total decrease | | $ 13,705 45 |
| Net increase as above | | $ 47,306 19 |

### Schedule 4.

#### Explanation of Items Changed.

(a), (b), and (c) Reserves whose additions are not allowable deductions from net income are added to invested capital.

(d) The Lyons balance sheet has been corrected to reflect the correct condition and the controlling account for the Lyons Company has been correspondingly adjusted.

(e) Correction for appreciation in investment of Griswold Worsted Company stock:

| | | |
|---|---:|---:|
| Elimination made on return | $285,000 00 | |
| As corrected | 287,453 33 | |
| Additional deduction | $ 2,453 33 | |
| (f) 1918 tax as corrected | $203,998 11 | |
| $203,998.11, allocated for quarterly payments ($203,998.11x4226) | 86,209 60 | |
| Deducted on return | 81,427 18 | |
| Additional deduction | $ 4,782 42 | |

(g) Adjustment is made for 1917 additional tax as follows:

| | | | |
|---|---:|---:|---:|
| Salt's Textile Manufacturing Company, additional assessed in 1919 | | $13,630 65 | |
| Less abatements .... $7,891 84 | | | |
| 259 39 | | 8,151 23 | $5,479 42 |
| Griswold Worsted Company, additional assessed in 1919 | | $ 2,741 96 | |
| Less abatement | | 2,071 81 | 670 15 |
| Salt's Textile Company, Inc., additional assessed in 1919 | | | 15 42 |
| Deduction from invested capital | | | $6,164 99 |

(h) Adjustment is made for inadmissibles as follows:

| | | |
|---|---:|---:|
| Invested capital before adjustment for inadmissibles | $6,931,166 75 | |
| Adjustment ($6,931,166.75x.0064) | 44,359 47 | |
| Deduction on return | 44,054 76 | |
| Additional deduction | $ 304 71 | |

### Schedule 5.

#### Proof of Invested Capital.

| | | |
|---|---|---:|
| Capital stock | | $2,874,300 00 |
| Surplus | | 3,193,053 59 |
| Reserves: | Bad debts | 16,998 25 |
| | Inventory | 100,000 00 |
| | Dividends | 27,800 25 |
| | State tax | 12,000 00 |
| | City tax | 9,565 61 |
| | Federal tax | 184,600 00 |
| | French tax | 215,494 50 |

| | | |
|---|---|---:|
| Total, corrected balance sheet beginning of year | | $6,633,812 20 |
| Additions: | Preferred stock issued | 6,369 87 |
| | Surplus at acquisition of Griswold Worsted Company | 410,097 88 |
| Total | | $7,050,279 95 |

| | | | |
|---|---|---|---:|
| Reductions: | 1918 income tax | $86,209 60 | |
| | 1917 income tax | 6,164 99 | |
| | Dividends | 26,738 61 | |
| | Inadmissibles .. | 44,359 47 | |
| Total (deduct from above) | | | 163,472 67 |
| As shown on schedule No. 3 | | | $6,886,807 28 |

### Schedule 6.

#### Computation of Excess Profits Credit.

| | |
|---|---:|
| Consolidated invested capital, taxable year (schedule 3) | $6,886,807 28 |

#### Excess Profits Credit.

| | |
|---|---:|
| 8 per cent. of invested capital for taxable year | 550,944 58 |
| Exemption | 3,000 00 |
| Excess profits credit | $ 553,944 58 |

### Schedule 7.

#### Computation of Total Tax (1919).

| Excess Profits Tax. | Income. | Tax. |
|---|---:|---:|
| Net income for taxable year | $2,842,859 41 | |
| Less excess profits credit | 553,944 58 | |
| Balance | $2,288,914 83 | |
| Taxable at 20 per cent. | $ 823,416 88 | $164,683 38 |
| Taxable at 40 per cent. | 1,456,497 25 | 586,198 90 |
| | $2,288,914 13 | $750,882 28 |

#### Income Tax.

| | | |
|---|---:|---:|
| Net income for taxable year | $2,842,859 41 | |
| Less: Interest on obligations of United States not exempt ....$ | 814 20 | |
| Excess profits tax | 750,882 28 | |
| Exemption .. | 2,000 00 | 753,696 48 |
| Taxable at 10 per cent. | $2,089,162 93 | 208,916 29 |
| Total excess profits and income taxes | | $959,798 57 |
| Less foreign income, war profits, and excess profits taxes | | 30,004 97 |
| Total tax | | $929,793 60 |
| Previously assessed | | 635,429 25 |
| Additional tax to be assessed | | $294,364 35 |

Said sum of $318,381.54 was assessed September 4, 1926, by the Commissioner of Internal Revenue.

"(10) The conversion of assets of the branches in France in or acquired with francs to dollars, as at December 31, 1919, if allowable, shows an alleged loss sustained by Salt's Textile Manufacturing Company in France of the Lyons branch of $268,956.57 (which Salt's Textile Manufacturing Company deducted from income), computed as follows:

| | Francs as at Dec. 31, 1919. | Conversion Rate frcs. per $1. | United States Currency. |
|---|---:|---:|---:|
| Fixed assets: | | | |
| Land, buildings, and machinery (net) | 1,299,855.40 | at cost | $ 238,807.92 |
| Current assets: | | | |
| Inventories | 3,822,601.85 | | |
| Accounts receivable | 1,493,087.65 | | |
| Investments | 200,000.00 | | |
| Cash | 4,573,047.60 | | |
| | 10,088,737.10 | 10.85 | $ 929,837.52 |
| Total | 11,388,592.50 | | $1,168,645.44 |
| Less liabilities: | | | |
| Purchase-money obligations | 295,000.00 | | |
| Accounts payable | 1,401,120.21 | | |
| Taxes payable 1915-1919 | 1,613,221.25 | | |
| | 3,309,341.46 | 10.85 | $ 305,008.43 |
| Net current assets | 6,779,395.64 | 10.85 | $ 624,829.09 |
| Total net assets... | 8,079,251.04 | | $ 863,637.01 |

| | |
|---|---:|
| Balance in account with French business on Bridgeport books at December 31, 1919, before reconciliation with balance sheet of French business as shown above | 1,132,593.58 |
| Difference | $ 268,956.57 |

"(11) The Salt's Textile Manufacturing Company, prior to and during 1919, in addition to the cash of the Lyons branch listed in the preceding paragraph, made remittances to and maintained deposits of foreign moneys in various banks and commercial houses in France, Germany, and England, which were carried on the books at Bridgeport at cost in dollars. The balance of these cash deposits on December 31, 1919, at cost in dollars when converted to dollars at the current rate of exchange prevailing at that time (10.85 francs to the dollar), resulted in a net difference of $71,136.95, no part of which arose from closed or completed transactions. An additional item not included in the present assessment appears in paragraph 15.

"(12) Salt's Textile Manufacturing Company during 1919 contemplated the organization of a separate corporation to take over its business in France, and on September 8, 1919, had set aside 750,000 francs as a partial subscription to the stock of the new company. The new company was not completely organized or in use or operation until August, 1920. At the time this money was set aside, an entry was made on the books at Bridgeport, charging the new company with $144,750, representing value of 750,000 gold francs, and crediting the Guaranty Trust Company, Paris, a like amount. On December 31, 1919, a further entry was made, debiting profit and loss account and crediting the new company in the amount of $55,144.26, which represents the difference between the value of 750,000 gold francs and the current rate representing the value of paper francs (8.37 francs to the dollar) prevailing as at September 8, 1919, and is the amount deducted as a loss on the return. A further adjustment as at December 31, 1919, representing the decline in the franc from September 8, 1919, to December 31, 1919, is a part of the difference stated in paragraph 11.

"(13) If the decline in the value of the franc in terms of dollars or gold is to be ignored, Salt's Textile Manufacturing Company, instead of sustaining a loss in the conduct of the Lyons branch of $268,956.57, derived an apparent profit, which, converted to dollars at current rate of exchange as at December 31, 1919, amounted to $78,689.23, which would be subject to income and profits taxes under the Revenue Act of 1918. (Schedule 2 of Exhibit B.)

"(14) The alleged deficiency is computed by adding to net income of $2,355,212.74, as disclosed by the amended return, the alleged losses theretofore deducted by Salt's Textile Manufacturing Company, arising from the conversion of current assets from francs to dollars as at December 31, 1919 (and in the case of one transaction as at September 8, 1919), and by adding thereto an alleged profit on the business conducted by Salt's Textile Manufacturing Company in France of $78,689.23, as shown on Schedule 1 of Exhibit B and in Schedule 1 of Exhibit A.

"(15) As a result of a further examination it is agreed that, in addition to the income above described, Salt's Textile Manufacturing Company received by reason of closed exchange transactions income of $11,820.83, correlated with which were corresponding unclosed exchange transactions on its books. If the accounts representing such correlated unclosed exchange transactions are allowed to be reduced to their value in dollars at the end of the year 1919, Salt's Textile Manufacturing Company incurred an allowable loss of $11,820.83, exactly offsetting the said additional income, and not varying the amount of tax due. If said accounts are not permitted to be reduced to their value in dollars at December 31, 1919, there will be an additional tax because of such additional income of $5,437.58."

Testimony was introduced by the receiver explanatory of the agreed statement of facts, and both parties rest on the stipulation and the testimony. It thus appears that, of the total of $318,381.54 and interest claimed by the government, the sum of $71,115.05, with appropriate interest, is uncontroverted. All or part of the balance of $247,266.49 is assessable or not, depending on whether the contentions advanced by the receiver as to the status of the items hereinafter enumerated are valid or not. These items, then, reduce themselves to the following:

(1) An item of $268,956.57, diminution in income claimed to have been suffered by the defendant in the value of its French assets upon the conversion, on December 31, 1919, of its current assets abroad, consisting of cash, investments, inventories, and accounts receivable from franc values into dollar values at the then current rates of exchange, deducting therefrom the total foreign current liabilities, and adding thereto the fixed assets, consisting of land, buildings, and machinery taken at dollar cost. The sum thus arrived at, when deducted from the balance on the home books in account with the French books, gives $268,956.57.

(2) An item of $71,186.95, loss claimed to have been incurred in the value of bank balances in foreign currency carried by the defendant in various banks in France, Germany, and England, by reason of the dollar

depreciation of said currency from the dollar cost.

(3) An item of $55,144.26, loss claimed to have been incurred by reason of the decline in value of 750,000 francs in terms of dollars, which francs had been set aside as a partial subscription to the capital stock of a French corporation which the defendant was about to organize. The stipulation asserts that francs were worth 5.44⅞ to the dollar on December 31, 1918, and 8.37 to the dollar on September 6, 1919. The item of $55,144.26, however, represents the difference in value between 750,000 gold francs and 750,000 paper francs as of September 8, 1919.

(4) An item of $11,820.83, additional income received by reason of "closed exchange transactions" which were "correlated with corresponding unclosed exchange transactions" on the defendant's books. The significance of all of this is rather obscure, and the oral evidence has failed to enlighten me. However, I shall assume that this item falls generally into the category represented by the second item of $71,136.75. If I am in error as to this, the stipulation will have to be amplified on this point, or additional oral testimony taken.

(5) An item of $30,004.97, income and excess profits tax paid to the French government for operations in 1919.

[1] 1. *The Item of $268,956.57.*—By the stipulation of the parties it is agreed that "the conversion of assets of the branches in France in or acquired with francs to dollars, as at December 31, 1919, if allowable, shows an alleged loss sustained by Salt's Textile Manufacturing Company in France of the Lyons branch of $268,956.57," etc. The sole question then, as to this item, is whether or not such conversion is allowable.

The question seems to be one of novel impression, and no adjudications directly in point have been cited by either party. The position taken by the receiver is that, the business being that of an American concern, the question as to whether or not it earned a profit or sustained a loss is to be determined by a comparison of the valuation in dollars of the current assets at the beginning of the taxable year and the valuation in dollars of those assets at the end of the year. There is no question involved here of diversion of income during the year. While for the purposes of French taxation the sole question is whether or not such assets have a less or greater value in francs, for purposes of American taxation the standard to be applied is the dollar. In the case of a heavily declining currency, it might easily happen that there would be an apparent increase, locally, in the value of current assets at the end of the year, because in terms of francs or marks the value might be greater; whereas, such assets, when valued in any currency at parity with gold, might be less at the end of the year than at the beginning. Our own income tax law, however, speaks of incomes, assets, and liabilities in terms of dollars. It measures gain and loss in terms of dollars.

On the other hand, the United States contends that a franc or a mark partakes of the nature of a security; that a depreciation in the value of either is not to be deducted as a loss until the loss has been realized by the actual bona fide sale of the security. The French assets were not, in fact, sold, and therefore, it is asserted, that the losses, if any, were not realized.

It must be obvious, from this presentation of the respective contentions, that the arguments of counsel are somewhat at cross purposes. The contention of the receiver really involves an exegesis to that part of the statute which attempts to determine income, while that of the government is an attempt to apply the provisions relating to allowable deductions.

Now, before we come to the question as to what constitutes an allowable deduction, we must first ascertain what has been the income. "Income," as such is nowhere defined in the statute. Perhaps an absolute definition is impossible. When we use the words "gain or increase from labor or the use of capital," we by no means settle the matter; for "gain" and "increase" are terms of relative import, and unless we delimit these we have merely substituted one problem for another.

Let me illustrate: A general rise in the price of commodities may, among other things, be due to an inflation of the currency, or to a scarcity of labor or material, or both, due to a diversion of the same to unproductive uses. During the World War both influences operated powerfully in Europe. In America, however, the increase in the price of commodities was not due to the first of the causes assigned. While it is true that the dollar maintained its parity with gold, nevertheless the increase in the price of commodities due to the second cause was accompanied by a concomitant depression in the value of gold. If, therefore, a person whose whole fortune consisted, let us say, of cash in savings banks, amounting to $100,000 at the beginning of the year, had an income therefrom of $4,000, that income would be subject to the payment of an income tax.

Nevertheless, $104,000 at the end of the year, when measured in the necessities and comforts of life, might be worth substantially less than $100,000 at the beginning of the year. The "gain," then, would have been apparent rather than real, because, after all, the dollar is but the symbol of purchase power. However, as our statute, by implication, fixes the dollar as the measure of value, an addition in dollars worth arising out of the use of dollars constitutes "income."

If, then, the dollar constitutes for us the norm of our values, regardless of the fluctuations in the extent of its purchase power, on what theory and by what authority is another standard to be applied? Our tax law does not measure assets in terms of marks, francs, or kronen, any more than in terms of wheat or pig iron. Nor can it be of any relevancy or importance to us, whether or not in terms of francs or marks, there has or has not been an addition to the capital, whether the capital is located in Chicago or in Paris. Regardless of the situs of its capital, it is the income of an American corporation which is the subject of measurement, and income accrues to it only in terms of dollars.

Let us assume, then, that an American corporation has spent in the course of the taxable year $100,000 for raw material, labor, rents, and all other overhead. Let us assume that the total commodities resultant from this expenditure have been sold for $75,000. There would then be a loss of $25,000. Now, if this expenditure and these sales took place in France, instead of, let us say, in Connecticut, would the loss be any the less, or any different? The question hardly admits of an affirmative answer.

Let us, then, further assume that these operations occurred in France. The convenience of the business required that the operations should be carried on in the local currency. Goods were to be bought with francs; labor was to be paid in francs; sales were to be based upon francs; cash collected was in francs. So that at the beginning of the year the $100,000, let us assume, was converted into 500,000 francs. Let us now assume that, by reason of the decline in the dollar value of the franc, $75,000 at the end of the year was worth 750,000 francs. Would these facts serve to transmute an actual loss of $25,000 into a gain of $25,000? Such alchemy does not reside in the depreciated franc.

The government insists that the method of ascertaining whether or not there was a gain or a loss is to measure the total number of francs' value at the beginning of the year against the total number of francs' value at the end of the year. It is only if the business shuts down and closes out that it may then "realize" its loss; as long as it continues to function, it has had a gain, regardless of the real facts. Just why it is necessary for the business to close out in order to realize a loss, whereas this procedure is wholly unnecessary in order to realize the gain contended for by the government, is not explained. If the analogy of securities were consistently applied, the failure to sell and close out would bar the finding of a profit equally with the realization of a loss. But, in any event, I regard the reasoning as fallacious. Francs are not securities; at any rate, not when employed as a measure of payment in the ordinary course of commerce. They are symbols of value necessarily employed in localities which will recognize no other symbols of value. The defendant corporation was not dealing in francs. It was dealing in merchandise; it was dealing with Frenchmen, and its business requirements dictated the use of the French language and French currency. But its profits and its losses registered, not in francs, or sheep, or wampum, but in dollars. Whatever it had in France it drew from America; and, unless it gave back to America more than it drew, it is idle to speak of profits.

I regard, then, the valuation of these assets in terms of dollars, not as the inventory of francs or accounts receivable. If a French debtor owed 100,000 francs to the defendant at the end of the year, the transmutation of these francs into dollars was but the translation of French into English. The government itself has effected such a translation in its assessment of the additional taxes. It could not otherwise have proceeded at all. But the vice of the government procedure lies in the restricted subject-matter of its translation. It gives us the American definition of francs on December 31, 1919, but refuses to give us the American definition of francs on January 1, 1919. It impliedly takes the position that the American definition of December 31, 1919, must be taken as the definition for the whole year. But the stipulation speaks otherwise.

On that stipulation I find that the calculation of these assets in terms of dollars is allowable. I therefore find that the sum of $268,956.57 may be eliminated from the item of gross income.

2. *The Item of $71,136.95.*—The discussion, supra, is, I think, equally pertinent to this item. These various bank balances were the life blood of the foreign business.

They can in no real sense be segregated from the active business operations, and the same disposition and ruling will be made as to this item as was made to Item 1.

3. *The Item of $55,144.26.*—As to this item I have reached a different conclusion. As the sum of 750,000 francs was segregated from the business and set aside for the financing of a new corporation, this fund assumed the character of the investment considered in Haviland v. Edwards (C. C. A.) 20 F. (2d) 905. Until these francs were converted into dollars by an actual exchange, the loss resulting from this depreciation was not ascertained within the purview of the Revenue Act. This item is therefore disallowed.

4. *The Item of $11,820.83.*—For the reasons already stated, this item follows the disposition of the second item, and it is therefore allowed.

5. *The Item of $30,004.97.*—This item constitutes the sum in dollars paid to the French Republic for income and excess profits taxes for the year 1919. While, then, from the standpoint of dollar value, there was no income from the operations in France, nevertheless there was an apparent increase in franc value. This increase arose from the heavy decline of the franc in 1919. But, just as in this country, an apparent addition to dollar value would have been regarded as a gain, despite the decreased purchase power of the dollar, so in France the same result was reached, regardless of the decline of the franc. In view of the relative connotations of such terms as "gains," "losses," "income," etc., no impossible result is reached by conceding the fact of profit within the domain of the franc, while denying it within the jurisdiction of the dollar. Had both currencies retained their parity with gold, such a concession would, of course, be impossible.

The real difficulty, however, resides in the language of the statute. Section 238, Revenue Act 1918 (Comp. St. § 6336⅛rr), after allowing a credit to a domestic corporation for the amount of the income taxes paid to a foreign country upon income derived from sources therein, then provides:

(b) "This credit shall be allowed only if the taxpayer furnishes evidence satisfactory to the Commissioner showing the amount of income derived from sources within such foreign country."

It must be quite obvious, from the whole tenor of the stipulation, that the proviso set forth in the statute has not been complied with by the defendant corporation. For a showing of losses in a foreign country can hardly be considered as the equivalent of a showing "satisfactory to the Commissioner * * * of income derived from the source within such foreign country." Whatever may or may not be the justice of refusing the allowance of this item paid, as it was, under force majeure, the fact is that I am not privileged to adjudicate the question on such considerations. The policy of the law might well regard such a payment as an item deductible from gross income in the determination of net income. But the statute is there, and it contains a proviso, and on that statute, as I find it, this item must be disallowed.

Counsel will therefore submit a proper decree, in which computations of the additional taxes are made on the basis of paragraph 8 of the stipulation, and the allowances and disallowances hereinbefore indicated.

### On Petition for Reargument.

The government's petition for reargument is denied. The government endeavors to reargue the main conclusions heretofore reached. I find no adequate bases for such reargument. I have considered the additional informal memorandum submitted by counsel for the United States, as well as the reasoning therein set forth, which controverts my interpretation of the language of the stipulated facts; but, as indicated, I have decided not to change the conclusions already reached.

On the petitioner's application for reargument, which was granted, a further stipulation has been entered into by counsel, which is dated February 1, 1928, and marked Receiver's Exhibit A. It reads as follows:

"(1) The parties by their respective counsel join in advising the court that the item described in the receiver's petition for reargument, in paragraph 1, of $11,820.83, is not an allowable deduction from income, but is an additional item which counsel for the receiver concede should be added to net income and subjected to tax, if the item of $71,136.95 is not an allowable deduction.

"(2) Counsel concede that the item of $30,004.97, taxes paid to the French Republic, is allowable as a deduction from income under section 234 (a), par. 3 (d), of the Revenue Act of 1918, provided the contention of the receiver that it should be allowed as a credit under section 238 of said act is denied.

"(3) With respect to the item of $55,-144.26, it is agreed that $25,889.17 thereof was included in income as the result of an erroneous book entry which showed a fictitious profit, and that such amount of $25,-889.17 should be excluded from income. With

respect to the balance thereof, to wit, $29,-255.09, this constitutes the decline in value of 750,000 francs from cost to their current value at September 8, 1919, when set apart for investment in the new corporation to be formed.

"The above transaction stated in more detail is as follows: On May 22, 1919, Salt's Textile Manufacturing Company purchased 1,000,000 francs at a cost of $158,481.10. It charged the par value thereof, $193,000, and credited a gain of the difference, $34,518.90. Three-fourths of this, $25,889.17, is a part of the claimed deduction of $55,144.26, and, if said $25,889.17 is disallowed, a tax is laid on a fictitious gain equivalent thereto appearing in income. The charge-off or deduction of $55,144.26, to the extent of $25,889.17, corrects an erroneous book entry, and is not directly due to the decline of the franc. The balance, the decline in value of 750,000 francs from cost on May 22, 1919, to value at September 8, 1919, amounting to $29,255.09, represents the actual amount claimed as a deduction from income by reason of the decline of the franc prior to the setting apart of said 750,000 francs for investment.

"(4) It is agreed that no deduction on account of any decline in the exchange value of the 750,000 francs subsequent to the setting apart thereof at September 8, 1919, is included in the said item of $55,144.26, nor in the item of $71,136.95, nor was any such deduction otherwise made or claimed by the taxpayer.

"(5) It is agreed that anything contained in the briefs or petitions of the parties for reargument, or in the agreed statement of facts filed herein, if at variance with the above, and especially paragraph 5 of the receiver's said petition, and paragraph 1 of the government's said petition, shall be deemed to be amended hereby, in so far as inconsistent therewith."

I find that the item of $11,820.83 is to be disregarded as a factor in calculating the return. It was an item to be added to the amount taxable to the petitioner, provided the position of the government on the main issue was sustained.

[2] The item of $30,004.97 will be treated as an allowable deduction from the gross income upon the authority of section 234(a), par. 3(d), of the Revenue Act of 1918 (Comp. St. § 6336⅛pp).

[3] As for the item of $55,144.26, the same will be allowed as an elimination from the gross income. The government, by the stipulation, concedes that, in any event, the sum of $25,889.17 should be excluded from the income. The balance, to wit, $29,255.09, represents the difference between the amount paid for the 750,000 francs at the time of their purchase on May 22, 1919, and their value on September 8, 1919, the time when this sum was segregated as an investment. In the original opinion the stipulation was interpreted to mean that the sum of $55,144.26 constituted the difference in the value of 750,000 francs between the date of the segregation and the close of the year. The additional stipulation negatives this interpretation, as is shown by paragraph 4 of the additional stipulation, supra.

In computing the tax due, the item of $78,689.23, referred to in paragraph 13 of the original stipulation, alleged profit added by the Commissioner to income, is to be excluded from income, as the operation resulted in a loss.

Counsel will therefore submit a proposed decree embodying the conclusions reached and expressed in the original opinion as herein modified.