**ANDERSON, CLAYTON & CO.**
v.
**UNITED STATES.**
No. 232–55.

United States Court of Claims.
Dec. 3, 1958.

John C. White, Houston, Tex., Fulbright, Crooker, Freeman, Bates &

White, Houston, Tex., on the briefs, for plaintiff.

John A. Rees, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, Baltimore, Md., on the brief, for defendant.

LARAMORE, Judge.

This is a suit for the refund of income taxes. The claim is predicated on the disallowance by the Commissioner of Internal Revenue of a deduction in the amount of $413,463.19 for the year 1950.

Plaintiff is a domestic corporation with its principal offices in Houston, Texas. During the fiscal year ending July 31, 1950, and for many years prior thereto, plaintiff was engaged in the business of merchandising cotton in the United States and abroad, including Egypt. Its books and records are kept on a fiscal year basis and its Federal tax returns have been filed on the accrual basis for fiscal years ending on July 31.

Some time in 1930, plaintiff established a branch office at Alexandria, Egypt. The profits of the Alexandria branch were determined by adjusting the current accounts on the branch office books to their dollar value at the close of each fiscal year. The amounts in dollar value were then carried over to the home office account and reported as income for Federal tax purposes. This system of accounting by the plaintiff came under attack by the Internal Revenue Service and was the subject of a petition filed in the United States Tax Court covering the years 1933 and 1934. While the petition was under submission, a settlement was reached between the plaintiff and the Commissioner and resulted in an agreement which contained the following:

> "The income of the Havre Branch and other autonomous foreign offices keeping their accounts in a foreign currency is to be determined by the difference in dollar net worth at the beginning and end of the year adjusted for any profits transferred

from such branch during the year. In calculating the dollar net worth the current dollar rate of the foreign currency involved is used in the case of all current assets and all liabilities, and the dollar value of fixed assets is determined by the original foreign currency cost converted to dollars at the rates in effect when the investment was made. All inter-office transfers of funds are also included at the rates actually used. It is understood that inter-office accounts payable and receivable are treated as outside accounts on the books of the branches and the head office and that such inter-office balances are to be valued at current rates of exchange to obtain the correct net worth of the branch. In general, this method is intended to embody the principles set out in the case of Frederick Victor [Vietor] & Acheles [Achelis] v. Salt's Textile Mfg. Co., [D.C.] 26 F.2d 249, and to take into income the fluctuations in net worth resulting from changes in dollar values of liabilities and current assets carried in foreign currencies. It is the intention to avoid inclusion in income of any change in the dollar value of fixed assets and investments as a result of fluctuation of exchange rates unless and until such assets are sold or disposed of.

"In consideration of the foregoing, the taxpayer agrees that in subsequent years it will compute its income in accordance with these principles, that any claim for refund on such issue heretofore or hereafter filed, may be adjusted on such basis and any claim heretofore filed, including that for the year 1938, is waived to the extent such claim conflicts with the basis agreed upon; provided, however, this undertaking shall not be applicable or binding upon either party in the event of changes in the law subsequent to the date hereof requiring a different treatment."

Pursuant to the above agreement, plaintiff thereafter consistently reflected gains and losses from its exchange fluctuations on accounts payable to or receivable from its foreign subsidiaries and unrelated concerns as well as from its foreign branches. Included in the accounts of the Alexandria branch was the account of the Nile Ginning Company in which the plaintiff owned 97.2 percent of the stock. The current Egyptian pound account of the Nile Ginning Company on the books of the branch, and also of the parent company, was treated in the same manner as all other foreign currency balances. They were valued in dollars at the current rate of exchange and the difference between such value and the value previously recorded on the books was carried into an "optional account" as a gain or as a loss in exchange. These accounts were apparently adjusted twice a year and the so-called profit and loss was reflected in plaintiff's tax return filed at the end of its fiscal year.

On September 28, 1939, after the outbreak of World War II, the Government in Egypt clamped controls on the transfer of Egyptian pounds into United States dollars. This effectively prohibited plaintiff from remitting any profits it might receive at its Egyptian branch to its home office. However, the Egyptian Exchange Control did allow one remittance from the Alexandria branch to the home office of 50,000 Egyptian pounds between September 28, 1939 and January 31, 1949.

As of July 31, 1945, plaintiff had net unremitted earnings (after Egyptian taxes) of 128,119.471 Egyptian pounds all of which had been reported as United States income at the rate of $4.13 per pound. From July 31, 1945 until the time the branch office was liquidated, plaintiff continued to take into its United States income for tax purposes the United States dollar value of its branch office profits. The exact amounts of the earnings separated by years and showing foreign taxes paid are set forth in the findings.

On January 31, 1949, the Alexandria branch office was liquidated and the Nile Ginning Company took over all of the branch's assets and liabilities (findings 13 and 15). On July 31, 1949, plaintiff had on its books in Houston a current account receivable of 250,665.745 Egyptian pounds, representing blocked funds valued at the then rate of $4.13 per pound. Certain minor additions and reductions for interest accruals and miscellaneous items were made to the account receivable with the result that at July 31, 1950, such account amounted to 260,-552.220 pounds.

In September 1949 Britain devalued the pound sterling which resulted in a corresponding reduction of the Egyptian pound so that on July 31, 1950, the Egyptian pound was worth $2.50 The resulting decrease in the plaintiff's blocked Egyptian earnings amounted to $413,-463.19 for which plaintiff claimed a loss deduction on its fiscal 1950 income tax return. The Commissioner denied plaintiff's claimed deduction on the ground that the Egyptian account represented Egyptian income deferred under Mimeograph 6475. Mimeograph 6475 (CB 1950–1, p. 50) provides in pertinent part as follows:

"1. Numerous inquiries have been received by the Bureau relative to the proper treatment for Federal income tax purposes of income, either in currency or in other property, arising in countries having monetary or exchange restrictions. The existence of these restrictions often makes it difficult for taxpayers to ascertain the value, in terms of United States dollars, of the blocked income arising in countries having such restrictions.

"2. For the purposes of this mimeograph, the term 'deferable income' is used to describe income received by, credited to the account of, or accrued to a taxpayer which, owing to monetary exchange or other restrictions imposed by a foreign country, is not readily convertible into United States dollars or into other money or property which is readily convertible into United States dollars. However, income ceases to be 'deferable' when, to the extent thereof, (a) money or property in such foreign country is readily convertible into United States dollars or into other money or property which is readily convertible into United States dollars; (b) notwithstanding the existence of any laws or regulations forbidding the exchange of money or property into United States dollars, conversion is actually made into United States dollars or other money or property which is readily convertible into United States dollars; or (c) such income is used for nondeductible personal expenses, is disposed of by way of gift, bequest, devise, or inheritance or by dividend or other distribution, or, in the case of a resident alien, a taxpayer terminates his residence in the United States.

"3. A taxpayer, whether individual, corporate, or other, may elect to use a method of accounting (sections 41–43, Internal Revenue Code [26 U.S.C.A. §§ 41–43]) in which the reporting of 'deferable income' as taxable income is deferred until the income ceases to be 'deferable income,' at which time it is includible in gross income.

"4. A taxpayer who elects to use this method of accounting shall file with his Federal income tax return a return headed 'Report of Deferable Foreign Income, pursuant to Mimeograph No. 6475,' using for this purpose a separate income tax form of the same type as that with which it is filed. In such return, the taxpayer shall declare that the 'deferable income' will be included in taxable income for the year in which such income, to the extent thereof, ceases to be 'deferable income.' In such return, the taxpayer shall also declare that he waives any right to

claim that the 'deferable income' or any part thereof, was includible in his gross income for any earlier year.

\* \* \* \* \* \*

"8. Where the taxpayer adopts the method of accounting provided for by this mimeograph, losses shall also be taken into account under the rules for deferment stated herein.

"9. The provisions of this mimeograph will be applicable to all open taxable years. The taxpayer shall designate the first open taxable year for which the method of accounting provided herein shall be used. If such first taxable year is a prior taxable year, the report (prescribed in paragraph number 4, above) for such year and for each of the intervening taxable years in order shall be filed with the taxpayer's income tax return when the election is made as provided in such paragraph 4.

"10. A taxpayer who adopts such method of accounting shall before making any change or variation therein, secure the consent of the Commissioner."

Under the terms of the Mimeograph plaintiff filed deferred income tax returns for fiscal years 1946–1949.[1] Plaintiff claimed and was allowed a refund of all United States income taxes paid on the blocked funds for the years 1946–1949.

■■ It is the position of the plaintiff that under the collateral agreement entered into it is entitled, notwithstanding a deferral of taxes under Mimeograph 6475, to include the exchange fluctuations of its Egyptian account in determining its 1950 taxable income.

After filing of suit in this court the Government has conceded that with respect to 47,487.426 Egyptian pounds in the Egyptian account plaintiff is entitled to a loss deduction of $77,404.50 in 1950. The 47,487.426 pounds represent earn-

ings for years prior to 1946 which were included in United States income at the exchange rate of $4.13 per pound and upon which United States taxes have been paid.[2] As to the pounds remaining in the account upon which Federal taxes were once paid but refunded, the Government refuses to acknowledge a loss deduction because it maintains any loss sustained is attributable to the income which has been deferred and is therefore not susceptible to a loss deduction.

It is true that under plaintiff's method of accounting as set out in the collateral agreement, it would be entitled to include as a loss deduction the diminution of the dollar value of its Egyptian pound account in the year 1950. However, when plaintiff elected to come under the terms of the mimeograph which permitted the deferral of blocked income, it, to that extent, abandoned its former method of accounting and is now bound by the terms of the mimeograph.

The effect of an election under the mimeograph is to waive the right to claim that the income was reportable for any year other than the year in which it became unblocked. It follows that to the extent that plaintiff's Egyptian account represents earning for the years 1946–1949, it has never been reported as income for Federal tax purposes and will not become income until such time as it becomes unblocked.

The general rule as to deductibility is that there can be no loss for *tax purposes* on amounts which have never been reported as income. Warner Bros. Co. v. United States, 2 Cir., 214 F.2d 429, 431; Tiscornia v. Commissioner, 9 Cir., 95 F. 2d 678, 683. Inasmuch as the claimed 1946–1949 loss is based upon amounts unreported as income, no deduction can be allowed in the year 1950. Plaintiff, however, is entitled to deduct $77,404.- 50, representing the loss claimed on the pre-1946 tax paid Egyptian accounts, and

---

1. Apparently these were the only years open.

2. This is the 128,119.47 pound pre-August

1, 1945, Egyptian account of the Alexandria branch, less adjustments totaling 80,632.045 pounds (finding 19).

is entitled to judgment in the amount of $29,851.92 representing the overpayment.

Judgment will be entered for plaintiff in the amount of $29,851.92, with interest thereon as provided by law.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.