## VOLIVA v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Seventh Circuit. December 10, 1929.

No. 4132.

Theodore Forby, of Zion, Ill., for petitioner.

F. Edward Mitchell, of Washington, D. C., for respondent.

Before ALSCHULER and EVANS, Circuit Judges, and WOODWARD, District Judge.

EVANS, Circuit Judge. This appeal involves a dispute over the amount of appellant's income tax for the year ending January 31, 1922. The Commissioner refused the taxpayer a deduction of $35,000, and, on appeal to the United States Board of Tax Appeals, the ruling was sustained. This appeal followed. The only question involved is appellant's right to this deduction.

Appellant is a taxpayer residing at Zion, Ill., and engaged, among other things, in the real estate business. In 1911, after becoming the recognized head of the Christian Catholic Apostolic Church of Zion, he purchased from the receiver of that organization a large quantity of unimproved and improved farm land and unimproved city lots, for which he paid $950,000.

This cost was apportioned to the various lots and parcels of land as was by appellant deemed just and fair. This distribution cost forms the basis of the computations of taxpayer's gross income from sales of the leases of this land.

Appellant conceived the plan of offering long-term leases to members of his religious faith, and, in an intensive drive to accomplish his object, sold many leases. Each lease ran for approximately 1,080 years but the stipulated gross rental price was to be paid by the lessee in monthly installments in seven years only. Thereafter the lessee paid the taxes and a leasehold fee of $1, and agreed to keep the property in a "proper state of repair." If lessee failed to make the payments or to perform any of the covenants, the "contract might be forfeited and determined at the option of the appellant and upon such forfeiture the purchaser would forfeit and relinquish all payments thereunder heretofore made. ° ° * " Only small down payments were made when the lease was executed, and over a thousand tracts were sold between July 1 and December 31, 1922. The leasehold sales for the fiscal year ending January 31, 1922, amounted to $433,258.12. Appellant's income tax return for this year showed a gross income of $3,026,816.21. He claimed deductions to the amount of $2,834,603.67. It is out of these deductions that the present controversy arises. $55,000 was deducted as a reserve for bad and doubtful accounts. In this item was included a reserve of $35,000 for leasehold accounts receivable. This item was disallowed both by the Commissioner and Board of Tax Appeals.

In computing his income from leasehold sales, appellant reported the gross profits from such sales as gross income, and deducted therefrom the amount of the unearned portion of the leasehold sales. From this profit balance, appellant then claimed a deduction of $35,000, which he termed "a reserve for bad and doubtful accounts."

Under certain circumstances a reserve for bad debts may unquestionably be set up. Section 214 (a) (7) Revenue Act 1921 (42 Stat. 240). But where, as here, the taxpayer is reporting on installment sale transactions and adopts the cash receipts and disbursements method as the basis for determining his profits, no allowance can be made for a reserve to protect the unpaid installments. The income side of the report did not include the unearned portion of leasehold sales which appellant sought to offset by this $35,000 item. Obviously it would be unfair to allow as a deduction an item that had not found its way into the income sheet. If the amount for which a deduction in the way of reserve for bad debts is claimed has itself never been included in the receipts (and we are here speaking of installment sales) it should not be permitted as a deduction. This has been the consistent ruling of the Board of Tax Appeals, and the Commissioner. Appeal of Charles A. Collin, 1 B. T. A. 306; Appeal of Howard J. Simons, 1 B. T. A. 351; Appeal of J. Noble Hayes, 7 B. T. A. 936; Decision of the Commissioner, reported in C. B. VI-I, p. 69.

The order is affirmed.