JOSEY v. COMMISSIONER OF INTERNAL REVENUE.

No. 1844.

Circuit Court of Appeals, Tenth Circuit.
June 9, 1939.

454

Richard W. Fowler, of Oklahoma City, Okl. (John W. Swinford, Edgar S. Vaught, Jr., and Chandler, Shelton & Fowler, all of Oklahoma City, Okl., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes of H. I. Josey for the year 1934 in the amount of $983.03.

The material facts are these:

Cora and Ras Landry leased a certain business property in Beaumont, Texas, to I. Block for a period of 99 years from December 1, 1918. Block assigned the lease to the Block Realty Company.[1] On March 1, 1921, the Realty Company subleased the premises to D. A. Schulte, Inc.,[2] for the unexpired term of the original lease.

The sublease required Schulte to pay $22,500 annually in addition to taxes, assessments, upkeep, reconstruction cost and maintenance. This left a net of $13,500 to the sublessor, after payment of the annual ground rental of $9000 under the original lease.

On April 19, 1924, the Realty Company and Schulte entered into a contract under the terms of which Schulte paid the Realty Company $75,000 in lieu of the rent payable under the sublease for that part of the term commencing on January 1, 1925, and ending December 31, 1936.

On November 13, 1928, for a consideration of $50,000, the Realty Company assigned and conveyed to Josey a one-half interest in the original lease, subject to the Schulte sublease and the contract of April 19, 1924. Shortly prior thereto, one Perlstein had acquired the other half interest from the Realty Company. By reason of the prepayment of rentals under the agreement of April 19, 1924, Josey and Perlstein were to receive nothing from Schulte, the sublessee, until after December 31, 1936.

On April 13, 1934, Josey and Perlstein agreed to cancel the sublease in consideration of a surrender to them of the premises and a payment to each of $10,000. The sublessee, in addition to the above payments, paid the taxes for 1934 and three-fourths of the $9000 ground rent for that year. During the remainder of the year 1934 and the years 1935 and 1936, Josey received as his share of the net income from the property $4,292.85, $4,865.72 and $2,387.90, respectively. In April, 1934, when the sublease was cancelled, the highest annual rental that Josey and Perlstein could obtain for the property would net each $3,390, or approximately one-half of

---

[1] Hereinafter referred to as the Realty Company.

[2] Hereinafter referred to as Schulte.

what they would have received each year subsequent to 1936, if the sublease had not been cancelled.

The Commissioner treated the $10,000 received by Josey in 1934 as taxable income and proposed a deficiency assessment. Josey petitioned the Board of Tax Appeals for a redetermination of the tax. The Board sustained the determination of the Commissioner.

Josey contends that the $10,000 received by him was not taxable because the cancellation of the sublease resulted in a loss of an amount greatly in excess of $10,000, namely, the difference between the amount receivable under the sublease for the remainder of the term and the amount for which the premises could be leased to others.

■ When the Schulte sublease was cancelled, Josey surrendered a contractual right to receive annual rentals far in excess of what he is now receiving from the premises for a consideration of $10,000. This difference does not constitute a taxable loss since it has never been acquired and reported as income and for tax purposes that which has never been reported as income (unless its gain is nontaxable) has never been acquired. Tiscornia v. Commissioner, 9 Cir., 95 F.2d 678, 683. In other words, had Josey continued to receive the rentals under the sublease, he would have had to report them as income. And not having received them, he suffered no deductible loss.

■ However, the difference between the cost to Josey of the contractual right to receive the future rents under the sublease and the $10,000 received as a consideration for the surrender of such contractual right does constitute either a taxable gain or a deductible loss. See Paul & Merton's Law of Federal Income Taxation, Vol. 2, § 18.02; §§ 111, 113, Revenue Act of 1934, 48 Stat. 703, 706, 26 U.S.C.A. §§ 111, 113.

In 1928, Josey paid $50,000 for a half interest in the original lease, subject to the Schulte sublease. He contends the effect of this transaction was that he bought a written obligation of Schulte to pay him $6,750 annually for 81 years beginning January 1, 1937; that although the determinable value in 1928 may be assumed to have been $50,000, in 1934 the obligation had increased in value because the date upon which the annual payments were to start was then only two and three-fourths years distant; and that because of the transaction of April 13, 1934, he lost the then existing value of the sublease obligation.

■ The increase in value of Josey's interest over the 1928 cost was not taxable income. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120; New York Life Ins. Co. v. Edwards, 271 U.S. 109, 116, 46 S. Ct. 436, 70 L.Ed. 859. In United States v. S. S. White Dental Mfg. Co., supra, the court said [274 U.S. 398, 47 S.Ct. 600]:

"The statute obviously does not contemplate and the regulations * * * forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer."

It necessarily follows that the actual cost to Josey and not the appreciated value must be taken as the cost basis in computing a taxable gain or a deductible loss.

The cost to Josey of the lease, subject to the sublease, was $50,000. Assuming some part of that amount was paid for the sublease obligation, the record does not show that any attempt was made by Josey to establish what part of the $50,000 was paid for such contractual obligation.

In Consolidated Freight Lines v. Commissioner, 9 Cir., 101 F.2d 813, 814, the court said:

"Assuming in the present case that the monopolistic features of the certificates issued under the 1921 statute had some value apart from the operative rights, and that the monopolistic features were destroyed by the 1934 legislation, the petitioner has not shown what part of cost is attributable separately to those features. Hence it has not established its basis for gain or loss."

Furthermore, if we could say that the sublease obligation cost $50,000, or all of the consideration paid in 1928, Josey is in no better position because he offered no proof as to the consideration received on April 13, 1934, over and above the $10,000, namely, the then value of the original lease relieved of the burden of the sublease. See § 111(b), Revenue Act of 1934, 48 Stat. 703, 26 U.S.C.A. § 111(b).

■ Under Section 23(a) of the Revenue Act of 1934, 48 Stat. 688, 26 U.S.C.A. § 23 (a), and Art. 23(a)(10), Tr.Rep. 86, Josey is entitled to an amortization deduction of an aliquot part of the $50,000 paid by him for one-half interest in the lease each year until the entire cost has been

amortized. In his income tax return for 1934, he claimed a deduction of $542.99 for amortization of the leasehold. The Commissioner allowed $398.40 to be deducted for the eight months in 1934, for which Josey received rental.

Thus, it will be seen that Josey in order to secure the benefit of Art. 23(a)(10), supra, has taken the position that his one-half interest in the original lease cost $50,-000, and in order to secure a deduction to offset the $10,000 received at the time of the surrender of the sublease, has taken the position that he is entitled to offset his loss of the sublease obligation for which he paid some portion of the $50,000. Obviously, this would result in a double deduction.

Since Josey will eventually receive through amortization deductions the entire cost of $50,000, the disallowance of a loss deduction will result in no injustice to him.

The decision of the Board is affirmed.