## HORT v. COMMISSIONER OF INTERNAL REVENUE.

No. 517.   Argued March 7, 1941.—Decided March 31, 1941.

*Messrs. Walter J. Rosston* and *Edwin Hort* submitted for petitioner.

*Mr. Richard H. Demuth,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Morton K. Rothschild* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

We must determine whether the amount petitioner received as consideration for cancellation of a lease of realty in New York City was ordinary gross income as

defined in § 22 (a) of the Revenue Act of 1932 (47 Stat. 169, 178), and whether, in any event, petitioner sustained a loss through cancellation of the lease which is recognized in § 23 (e) of the same Act (47 Stat. 169, 180).

Petitioner acquired the property, a lot and ten-story office building, by devise from his father in 1928. At the time he became owner, the premises were leased to a firm which had sublet the main floor to the Irving Trust Co. In 1927, five years before the head lease expired, the Irving Trust Co. and petitioner's father executed a contract in which the latter agreed to lease the main floor and basement to the former for a term of fifteen years at an annual rental of $25,000, the term to commence at the expiration of the head lease.

In 1933, the Irving Trust Co. found it unprofitable to maintain a branch in petitioner's building. After some negotiations, petitioner and the Trust Co. agreed to cancel the lease in consideration of a payment to petitioner of $140,000. Petitioner did not include this amount in gross income in his income tax return for 1933. On the contrary, he reported a loss of $21,494.75 on the theory that the amount he received as consideration for the cancellation was $21,494.75 less than the difference between the present value of the unmatured rental payments and the fair rental value of the main floor and basement for the unexpired term of the lease. He did not deduct this figure, however, because he reported other losses in excess of gross income.

The Commissioner included the entire $140,000 in gross income, disallowed the asserted loss, made certain other adjustments not material here, and assessed a deficiency. The Board of Tax Appeals affirmed. 39 B. T. A. 922. The Circuit Court of Appeals affirmed per curiam on the authority of *Warren Service Corp.* v. *Commissioner*, 110 F. 2d 723. 112 F. 2d 167. Because of conflict with *Commissioner* v. *Langwell Real Estate Corp.*, 47 F. 2d 841, we

granted certiorari limited to the question whether, "in computing net gain or loss for income tax purposes, a taxpayer [can] offset the value of the lease canceled against the consideration received by him for the cancellation." 311 U. S. 641.

Petitioner apparently contends that the amount received for cancellation of the lease was capital rather than ordinary income and that it was therefore subject to §§ 101, 111–113, and 117 (47 Stat. 169, 191, 195–202, 207) which govern capital gains and losses. Further, he argues that even if that amount must be reported as ordinary gross income he sustained a loss which § 23 (e) authorizes him to deduct. We cannot agree.

The amount received by petitioner for cancellation of the lease must be included in his gross income in its entirety. Section 22 (a), copied in the margin,[1] expressly defines gross income to include "gains, profits, and income derived from . . . rent, . . . or gains or profits and income derived from any source whatever." Plainly this definition reached the rent paid prior to cancellation just as it would have embraced subsequent payments if the lease had never been canceled. It would have included a prepayment of the discounted value of unmatured rental payments whether received at the inception of the lease or at any time thereafter. Similarly, it would have extended to the proceeds of a suit to recover damages had the Irving Trust Co. breached the lease in-

---

[1] Sec. 22 (a). "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

stead of concluding a settlement. Compare *United States* v. *Safety Car Heating Co.*, 297 U. S. 88; *Burnet* v. *Sanford*, 282 U. S. 359. That the amount petitioner received resulted from negotiations ending in cancellation of the lease rather than from a suit to enforce it cannot alter the fact that basically the payment was merely a substitute for the rent reserved in the lease. So far as the application of § 22 (a) is concerned, it is immaterial that petitioner chose to accept an amount less than the strict present value of the unmatured rental payments rather than to engage in litigation, possibly uncertain and expensive.

The consideration received for cancellation of the lease was not a return of capital. We assume that the lease was "property," whatever that signifies abstractly. Presumably the bond in *Helvering* v. *Horst*, 311 U. S. 112, and the lease in *Helvering* v. *Bruun*, 309 U. S. 461, were also "property," but the interest coupon in *Horst* and the building in *Bruun* nevertheless were held to constitute items of gross income. Simply because the lease was "property" the amount received for its cancellation was not a return of capital, quite apart from the fact that "property" and "capital" are not necessarily synonymous in the Revenue Act of 1932 or in common usage. Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22 (a) expressly characterizes as gross income, it must be regarded as ordinary income, and it is immaterial that for some purposes the contract creating the right to such payments may be treated as "property" or "capital."

For the same reasons, that amount was not a return of capital because petitioner acquired the lease as an incident of the realty devised to him by his father. Theoretically, it might have been possible in such a case to value realty and lease separately and to label each a capital asset. Compare *Maass* v. *Higgins*, 312 U. S. 443;

Appeal of Farmer, 1 B. T. A. 711.   But that would not
have converted into capital the amount petitioner re-
ceived from the Trust Co., since § 22 (b) (3)[2] of the 1932
Act (47 Stat. 169, 178) would have required him to in-
clude in gross income the rent derived from the property,
and that section, like § 22 (a), does not distinguish rental
payments and a payment which is clearly a substitute
for rental payments.

We conclude that petitioner must report as gross in-
come the entire amount received for cancellation of the
lease, without regard to the claimed disparity between
that amount and the difference between the present value
of the unmatured rental payments and the fair rental
value of the property for the unexpired period of the
lease.   The cancellation of the lease involved nothing
more than relinquishment of the right to future rental
payments in return for a present substitute payment and
possession of the leased premises.   Undoubtedly it dimin-
ished the amount of gross income petitioner expected to
realize, but to that extent he was relieved of the duty
to pay income tax.   Nothing in § 23 (e)[3] indicates that

---

[2] Sec. 22 (b).   The following items shall not be included in gross in-
come and shall be exempt from taxation under this title: . . .

(3) The value of property acquired by gift, bequest, devise, or
inheritance (but the income from such property shall be included in
gross income).

[3] Sec. 23 (e).   Subject to the limitations provided in subsection (r)
of this section, in the case of an individual, losses sustained during
the taxable year and not compensated for by insurance or otherwise
[shall be deductible from gross income]—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though
not connected with the trade or business; or

(3) of property not connected with the trade or business, if the
loss arises from fires, storms, shipwreck, or other casualty, or from
theft.   No loss shall be allowed as a deduction under this paragraph
if at the time of the filing of the return such loss has been claimed
as a deduction for estate tax purposes in the estate tax return.

Congress intended to allow petitioner to reduce ordinary income actually received and reported by the amount of income he failed to realize. See *Warren Service Corp.* v. *Commissioner, supra; Josey* v. *Commissioner,* 104 F. 2d 453; *Tiscornia* v. *Commissioner,* 95 F. 2d 678; Farrelly-Walsh, Inc., *v.* Commissioner, 13 B. T. A. 923; Goerke Co. *v.* Commissioner, 7 B. T. A. 860; Merckens *v.* Commissioner, 7 B. T. A. 32. Compare, *United States* v. *Safety Car Heating Co., supra; Voliva* v. *Commissioner,* 36 F. 2d 212; Appeal of Denholm & McKay Co., 2 B. T. A. 444. We may assume that petitioner was injured insofar as the cancellation of the lease affected the value of the realty. But that would become a deductible loss only when its extent had been fixed by a closed transaction. Regulations No. 77, Art. 171, p. 46; *United States* v. *White Dental Mfg. Co.,* 274 U. S. 398.

The judgment of the Circuit Court of Appeals is

*Affirmed.*