CHARLES E. McCARTNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EVELYN McCARTNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12704, 12705. Promulgated March 9, 1949.

*Austin H. Peck, Jr., Esq.*, for the petitioners.
*Earl C. Crouter, Esq.*, for the respondent.

OPINION.

ARNOLD, *Judge*: The respondent determined that the $69,300 received by the petitioners in 1944 upon the release of Charles E. McCartney's contract of June 24, 1935, with Lomita was ordinary income. The petitioners allege error in this determination. Their contention is that in 1935 McCartney owned, in addition to his 30 per cent stock interest, a property interest in Petrolane, the quantum and value of which were fixed by the price relationship between Petrolane and Lomita, and that such interest was a capital asset and all payments received by him under the 1935 contract, including the amount received in 1944, were for the sale or exchange of this interest in Petrolane not represented by his stock.

Petitioners' premise is false. McCartney had no property right in Petrolane separate and apart from his stock. His 1929 contract with Lomita had been transferred to Petrolane and he retained no rights in it. When McCartney consented to the modification of the 1929 contract price there may have been a reduction in the value of his stock consequent upon the reduction of profits reasonably to be expected from the change in price. This reduction, if we assume it occurred, was not a disposition of a capital asset. McCartney still retained his stock and any change in its value would utimately enter into his capital gain or loss upon its disposition. A payment for a loss in value of an asset, where the asset is retained, does not involve a sale or exchange of a capital asset and is ordinary income. *Levinson* v. *Commissioner*, 154 Fed. (2d) 60.

The 1935 contract provides in part:

WHEREAS, any modification of said contract [the 1929 contract] which would increase the amount to be paid to First Party [Lomita] for such gases would reduce the amount of *profits* to be paid to Second Party [McCartney] * * * and;

*       *       *       *       *       *       *

WHEREAS, Second Party is willing to permit a modification of said contract provided that his proportionate part of the *profits* shall not be affected thereby * * * [Emphasis supplied.]

The 1935 contract does not purport to sell or transfer a property interest, as is now contended by petitioners. The parties expected that the increased price Petrolane would pay Lomita for gas would result in a reduction in the profits of Petrolane. The agreement provided a substitute to McCartney for the part of such profits he would lose. The payments provided by the contract, being a substitute for profits, which are income, were ordinary income and not capital gain. The payment of $69,300 in 1944, in settlement of Lomita's obligation to

pay this income to McCartney in the future, likewise was ordinary income. *Hort* v. *Commissioner*, 313 U. S. 28.

The petitioners contend, in the alternative, that the transaction in 1944 was the sale of a capital asset, namely, the 1935 contract, which was valuable to the petitioner, as he received substantial amounts under it and was required to perform no services of any kind in return. We have concluded, as stated above, that the 1944 payment was ordinary income; but, assuming, *arguendo*, that the contract was a capital asset, the 1944 transaction was not a sale thereof. A taxpayer seeking the benefits of section 117 of the code must show that there has been a sale or exchange and that he has disposed of a capital asset. A sale is a contract whereby one acquires a property in the thing sold and the other parts with it for a valuable consideration. Words and Phrases, Permanent Ed., vol. 38, p. 58. Where a note is surrendered to the maker on payment of all or a part of the debt, there is no acquisition of property by the maker and no transfer of property to him. *Hale* v. *Helvering*, 85 Fed. (2d) 819. The surrender to the maker for cash is not a sale to him and any property in the note vanishes. *Bingham* v. *Commissioner*, 105 Fed. (2d) 971. The contract here was not sold, it was extinguished. Lomita acquired no exchangeable asset. The transaction, although in form a sale, was a release of the obligation. This transaction did not involve the disposition of a beneficial interest in a trust, considered a capital transaction *Blair* v. *Commissioner*, 300 U. S. 5; *McAllister* v. *Commissioner*, 157 Fed. (2d) 235; certiorari denied, 330 U. S. 826, reversing 5 T. C. 714; *Bell* v. *Commissioner*, 137 Fed. (2d) 454, reversing 46 B. T. A. 484, nor was it the transfer of a right, as in *Ranier Brewing Co.*, 7 T. C. 162.

Since there was no "sale or exchange" of a capital asset, section 117 is not applicable and the entire payment constituted ordinary income to the petitioners.

*Decisions will be entered for the respondent.*