OWEN MEREDITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15569. Promulgated March 15, 1949.

*John D. McQueen, Jr., Esq.*, and *Carl C. Jamison, C. P. A.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

LEMIRE, *Judge:* This proceeding involves an income and victory tax deficiency of $4,837.31 for 1943. The only adjustment made by respondent is for 1942 income, which is involved by reason of the forgiveness feature of the Current Tax Payment Act of 1943.

The facts have all been stipulated and are incorporated herein as set out in the written stipulation of facts filed by the parties.

The only issue presented is whether the cash payments which the petitioner received in 1942 as the proceeds of certain fire insurance policies, covering improvements placed on the premises by petitioner's lessee, are taxable as capital gain or as ordinary income.

The facts may be summarized as follows: The petitioner entered into a lease agreement on January 10, 1941, with the Petroleum Carrier Corporation, of Jacksonville, Florida, under which the corporation leased from the petitioner for a period of ten years, at a rental of $600 a year, several parcels of real estate located at Tuscaloosa, Alabama. The lessee agreed to pay a rental of $600 annually and to erect on the premises within a period of three months certain improvements consisting of a warehouse, wharf, and docks, to cost not less than $8,000. It was provided that these improvements "shall upon being placed, erected and constructed on said lot or parcel of land be and become fixtures, and become and be, the absolute property of said Owen Meredith, subject only to the terms of this lease."

The lessee agreed at its own expense to keep the improvements covered by fire insurance policies taken out in the name of and made payable to the lessor. It was further provided that in case of the destruction of improvements by fire the lessor would permit the lessee, upon its request, to use the proceeds of the insurance policies to replace the destroyed property.

The improvements mentioned in the agreement were completed in September 1941 and fire insurance policies thereon in the aggregate amount of $20,000 were taken out by the lessee in the petitioner's name. These improvements were completely destroyed by fire on July 14, 1942, and on August 6 of that year the petitioner received from the insurance companies the net proceeds of the several policies, amounting in the aggregate to $19,132.77. The petitioner held the insurance money intact, awaiting the decision of the lessee as to whether it would replace the improvements. The lessee advised the

petitioner on December 24, 1942, that it would not do so and that it desired to cancel the lease as of December 31, 1942. The parties so agreed in writing on December 24, 1942. The petitioner refunded the lessee one-half ($300) of the rent for 1942, and also $889.05 representing unearned premiums which he had received on the policies.

In his income tax return for 1942 the petitioner reported the insurance proceeds as a capital gain. The amount reported was $18,879.51, after the addition to the $19,132.77 of $46.74 realized on the sale of scrap, less $300 of attorney and accountant fees for services in connection with settlement of the claim.

The respondent determined that the entire amount of $18,879.51 is taxable as ordinary gain. That is the only adjustment which he made in the petitioner's return.

The respondent concedes in his brief that:

* * * If the amount he received in fact represented a payment to him for the destruction of the improvements it would appear that he is correct in his contention for in that event section 117 (j) applies and only 50 per cent of the gain is to be taken into account as a long-term capital gain. * * *

The section referred to (117 (j)) specifically provides that the gain from the involuntary conversion of property used in the trade or business shall be taxed as capital gain. The respondent argues, however, that considering all of the circumstances the insurance proceeds should be regarded as a payment to the petitioner in consideration for cancellation of the lease, and, therefore, taxable as ordinary income under the rationale of *Hort* v. *Commissioner*, 313 U. S. 28. The respondent would make a distinction between the "legal" ownership of the improvements, which he admits rested in the petitioner, and the "beneficial" ownership, which he says was vested, under the lease agreement, in the lessee.

The respondent's position, we think, is untenable. There can be no question but that under the lease agreement the petitioner became the owner of the improvements at the time they were placed on the property. The only interest which the lessee had in them was the right to their use during the term of the lease. The cancellation of the lease immediately cut off that interest. At best, the lessee's interest in the insurance proceeds gave it no more than a bargaining power in the negotiations for cancellation of the lease. It could forego its right under the lease agreement to the use of the insurance proceeds to replace the improvements in consideration for release from its obligation to pay rent for the remainder of the lease term. No mention is made, however, in the lease cancellation agreement of December 24, 1942, of any consideration for cancellation of the lease. We can not find on the evidence before us that the insurance proceeds were in fact received by petitioner, to any extent, as consideration for cancellation of the lease.

Even if the lessee had continued the lease and had been permitted to use the funds to replace the improvements, the converted fund in the form of new improvements would still have been the property of the lessor. Thus, it would seem that the petitioner was actually the equitable, as well as the legal, owner of the improvements and the insurance proceeds.

Section 29.22 (b) (11)–1 of Regulations 111, upon which the respondent relies, provides in part that:

* * * Income derived by a lessor of real property upon the termination, through forfeiture or otherwise, of the lease of such property and attributable to buildings erected or other improvements made by the lessee upon the leased property is excluded from gross income. However, where the facts disclose that such buildings or improvements represent in whole or in part a liquidation in kind of lease rentals, the exclusion from gross income shall not apply to the extent that such buildings or improvements represent such liquidation. The exclusion applies only with respect to the income realized by the lessor upon the termination of the lease and has no application to income, if any, in the form of-rent, which may be derived by a lessor during the period of the lease and attributable to buildings erected or other improvements made by the lessee. It has no application to income which may be realized by the lessor upon the termination of the lease but not attributable to the value of such buildings or improvements. Neither does it apply to income derived by the lessor subsequent to the termination of the lease incident to the ownership of such buildings or improvements.

This regulation would be helpful to respondent only if the insurance proceeds "represent in whole or in part a liquidation in kind of lease rentals." As pointed out above, those are not the facts. The petitioner did not receive the insurance money as rent. He received it as compensation for his loss of the improvements which had already become his property. The total rent for the remainder of the lease term would have amounted to only $4,800, whereas the insurance proceeds were $19,132.77.

It might be noted that under section 112 (f), Internal Revenue Code, the petitioner would not have been taxable on the receipt of the insurance proceeds if he had permitted their use for replacing the improvements; nor under section 22 (b) (11), Internal Revenue Code, would he have been taxable on any gain from the acquisition of the improvements if they had not been destroyed and had remained on the premises until the termination of the lease. His gain would have been taxable when he sold or otherwise disposed of the property, presumably at the capital gain rates.

On the facts as they are set out in the stipulation submitted to us, we think that the respondent was in error in treating the proceeds of insurance policies as ordinary gain to the petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.