OXFORD PAPER CO. v. UNITED STATES.

United States District Court
S. D. New York.
Sept. 12, 1949.

Willkie Owen Farr Gallagher & Walton, New York City (Thomas N. Tarleau, Charles A. Davey, New York City, of counsel), for plaintiff.

John F. X. McGohey, United States Attorney, New York City (John B. Creegan, New York City, of counsel), for defendant.

RIFKIND, District Judge.

The taxpayer, Oxford Paper Co. (Oxford), sues for refund of income tax for the year 1937, together with interest thereon, collected by the defendant. The claim is that the Commissioner's disallowance of a deduction in that year's tax for depreciation of the taxpayer's Island Division Plant was erroneous. Certain facts have been stipulated and both parties ask for summary judgment.

Oxford acquired the plant, consisting of land, buildings, machinery and equipment, in 1936, pursuant to a tripartite agreement with its wholly owned subsidiary, Rumford Falls Power Company (Rumford) and Continental Paper & Bag Corporation (Continental), a subsidiary of International Paper Company (International). Continental was lessee of water rights owned by Rumford for which Continental had contracted to pay $70,000 per year in perpetuity, secured by a lien on the plant. The agreement provided: Continental would convey the plant and its rights under the water lease; in addition it would pay Oxford $100,000 in cash and $6,000 in stock of another corporation; Oxford would assume Continental's obligation to pay Rumford $70,000 a year and would lease the plant and water rights to International on terms which are not in evidence; Rumford would release Continental from its obligation under the water-rights lease and accept Oxford as substituted lessee. The buildings, machinery and equipment had a fair market value, at that time, of $350,000. Oxford reported $456,000 as gross income, for 1936, attributable to this transaction, but no tax was due or paid thereon. Neither Oxford nor the government has seen fit to examine the effect of the provision that Oxford was to execute a lease of the plant and water rights to International. Ten days after the execution of the agreement, Continental was adjudicated a bankrupt. Since it is stipulated that Oxford has held the plant and during 1937 used in its business facilities constituting 85% of the plant's value, it would seem that the lease to International was not executed. The buildings, machinery and equipment had a useful life of 15 years.

Oxford contends that fair market value is the basis, for purposes of depreciation, of property received in a taxable transaction and properly included in gross income at its fair market value. The government asserts that the depreciation basis of property is its cost to the taxpayer, which, it contends, in this case is zero, citing Detroit Edison Co. v. Com'r, 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286.

The applicable Revenue Act, Section 23, Revenue Act of 1936, 26 U.S.C.A. § 23, provides that a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence, is allowable as a deduction from gross income in computing net income, and that the basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114, 26 U.S.C.A. § 114.

That section provides that the basis shall be the adjusted basis provided in section 113 (b), 26 U.S.C.A. § 113(b), which in turn provides that the adjusted basis shall be the basis determined under subsection (a), adjusted as provided in subsection (b), No adjustments there provided are here applicable. The basis in this case is therefore governed by subsection (a) of section 113, which declares that the depreciation basis of property shall be the cost of such property, with exceptions which both Oxford and the Government agree are inapplicable.

█ "Costs", as used in this section, normally means cost to the taxpayer. Detroit Edison Co. v. Com'r, supra, 319 U.S. at page 102, 63 S.Ct. at page 904. It appears to be the Government's position that Oxford obtained all the properties from Continental for nothing. The reasoning by which the Government arrives at this position is not clear. Perhaps it considers Oxford's obligation to pay Rumford $70,000 per annum as a meaningless obligation to pay itself, since Rumford is Oxford's wholly owned subsidiary. But if Rumford could be treated as an alter ego of Oxford in this sense, it should consistently be so treated with regard to the entire transaction. In this view, Continental was initially the lessee of Oxford (acting through Rumford), and in consideration of the transfer of the plant, cash and stock, Oxford released Continental from its rental obligation under the lease. The amount received by a lessor for cancellation of a lease is taxable as income. Hort v. Com'r, 1941, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. Oxford reported $456,000 as income on this transaction. So much of that sum as is properly allocable to the buildings, machinery and equipment would constitute the basis for depreciation thereof, just as if the $456,000 had been received in cash, reported as income, and Oxford had then bought, with a portion thereof, the property here sought to be depreciated.

Thus, in this view, the Government's motion for summary judgment would have to be denied, the buildings, machinery and equipment not having been obtained without cost. The taxpayer's motion would also have to be denied, however, because it has not proved what portion of the $456,000 reported as income was attributable to the buildings, machinery and equipment and what portion to the land, which does not suffer wear and tear and affords no basis for depreciation.

It may also be the Government's view that, treating Oxford and Rumford as separate entities, the water rights received by Oxford were alone worth their rental price, and that therefore the properties received "to boot" cost Oxford nothing. The stipulation is silent on the value or rental value of the water rights. Consequently, I do not reach the question whether if the hypothesis were fact, the $456,000 would constitute income or a contribution to capital. In this view of the case both motions must be denied because the stipulated facts do not supply a sure platform for decision.

█ However, neither of the preceding interpretations of the transaction is tenable. Rumford and Oxford cannot be treated as one. They were separate taxpayers and Oxford did not file a consolidated return. The tax consequences of the transaction must be determined without regard to Oxford's ownership of Rumford. Oxford bought land, buildings, machinery and equipment, and water rights from Continental. It paid therefor by assuming a fixed monetary liability of the seller, and undertook another obligation, to lease to International. The basis for depreciation of property obtained in consideration of the assumption of liabilities is the amount of the liabilities assumed. Consolidated Coke Co. v. Com'r, 3 Cir., 1934, 70 F.2d 446. This basis is, of course, the cost to the taxpayer of the property. It follows that the Government's motion for summary judgment must be denied because the taxpayer did not receive the property sought to be depreciated at no cost to itself.

But summary judgment cannot be granted Oxford, either, because it has not yet established the cost of the buildings, machinery and equipment, apart from the

land and water rights received, i. e., it has not established the price paid nor what proportion thereof is allocable to the depreciable and what proportion to the nondepreciable property.

Motions denied.