**WARNER BROS. CO.**
v.
**UNITED STATES et al.**
**No. 238, Docket 23029.**

United States Court of Appeals,
Second Circuit.

Argued May 12, 1954.

Decided July 29, 1954.

Samuel G. Payne, Bridgeport, Conn., Otto C. Sommerich, Benjamin Busch, New York City, Samuel G. Payne, Bridgeport, Conn., of counsel, for plaintiff-appellant.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Howard P. Locke, Frederic G. Rita, Special Assts. to the Atty. Gen., Simon S. Cohen, U. S. Atty., Hartford, Conn., for defendants-appellees.

Before CHASE, Chief Judge, and AUGUSTUS N. HAND and HARLAN, Circuit Judges.

CHASE, Chief Judge.

The appellant is a Connecticut corporation which manufactures corsets and has its principal place of business in that state. In 1925 it licensed a German partnership to use its trade-marks, trade names and patterns in manufacturing corsets in Germany under an agreement

---

which provided for the payment to it of stated royalties.

On December 11, 1941, the successor of the first licensed German manufacturer owed the appellant several hundred thousand reichmarks which had accumulated to the credit of the appellant since January 1, 1933. Since then the licensee had been able, because of the currency restrictions imposed by the German Government, to make royalty payments only in blocked reichmarks which the appellant could not use outside of Germany except under a license issued by the Devisen Bureau of the German Government which had refused to grant repeated applications for such licenses. On the same date there was on deposit to the credit of the appellant in Vereimsbank, in Hamburg, Germany, 13,993 reichmarks, which we understand had been paid it on account of royalties which had become due under the license agreement, though the record does not make that clear. The payment of this bank account was subject to the same currency restrictions as was the account due from the German firm and attempts to free it from them had been futile.

The appellant did not in 1941, nor had it in previous years, reported the value of the above mentioned reichmarks as part of its gross income in any of its tax returns. Some other reichmarks which had been paid as royalties had been licensed for use as free marks and the appellant had reported the value of them as part of its gross income in the year in which they were received at forty cents each, which was the official rate of exchange for free reichmarks during the entire period here relevant.

The appellant paid taxes for the calendar year 1941 as follows: normal income and surtax, $156,926.79; declared value excess profits tax, $4,179.48; and excess profits tax, $131,945.97 computed on the returns it filed in which no deduction had been taken for any loss on account of the blocked reichmarks due it in Germany as above set forth. It did, however, file a timely claim for a refund of $119,854.87 based on the contention it then made

that it had overpaid its income and excess profits taxes for 1941 because in computing them the value in American money of the above mentioned blocked reichmarks due it in Germany had not been taken as a war loss deduction. The amount of the refund claim was computed by valuing these reichmarks at forty cents each and that amount was claimed to be deductible as a war loss under what is now Section 127(a) (2) I.R.C., 26 U. S.C. § 127.

This statute provides that:

"(a) Cases in which loss deemed sustained, and time deemed sustained. For the purposes of this chapter—

\*  \*  \*  \*  \*  \*

"(2) Property in enemy countries. Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States."

As the United States declared war upon Germany on December 11, 1941, the appellant relied on the above statute to show that it sustained a deductible war loss in its taxable year 1941 in the amount computed as above stated. All liability for taxes overpaid was denied by the appellees on the grounds that (1) the value of the blocked reichmarks due the appellant, which had never been reported by it as part of its gross income, was not, as a matter of law, deductible as a loss and (2) the blocked reichmarks had no market value in 1941.

It was held that the failure to include the value of the reichmarks in reporting gross income for taxation purposes was irrelevant in determining whether the appellant had sustained a war loss under Section 127(a) (2) I.R.C. which was deductible, but recovery was denied because it was found in respect to the reichmarks that, "They were so blocked by the German Devisen laws that the plaintiff never had any economic use thereof and the

plaintiff has not proved that they had any market value."

Although we have previously, in order to distinguish between blocked and free reichmarks and between German currency and its value in American money, treated reichmarks as having in this case some identity of their own, it is obvious that we are actually dealing with debts payable to the appellant in German money in Germany.

The debt owed the appellant by the German licensee was either taxable income which was reportable by the appellant in the years of its accrual, since the appellant reported on the accrual basis, or it would be taxable income when actually received, if ever. Thus, even assuming, *arguendo*, that it was an account receivable which became a war loss under Section 127(a) (2) I.R.C., as interpreted by T. R. 111, Sec. 29.127(a)–4, it was not, *ipso facto*, a deductible loss which could be used to reduce appellant's net taxable income for the taxable year. This statute fixes the date when a war loss is deemed to have occurred. It does not, however, make such a loss deductible merely because it is to be treated as having been sustained on the fixed date.

The general rule as to deductibility applies to such a loss and that is as stated in Tiscornia v. Commissioner, 9 Cir., 95 F.2d 678, 683. " * * * that there can be no loss suffered as to that which has never been acquired and that for tax purposes that which has never been reported as income (unless its gain is nontaxable) has never been acquired."

As was said by this court in Warren Service Corp. v. Commissioner, 2 Cir., 110 F.2d 723, 724:

"The difference between the income actually received and the income the taxpayer had expected to receive is not a deductible loss. What has been lost is merely prospective income. See Josey v. Commissioner, 10 Cir., 104 F.2d 453, 455." That this is so was made clear in Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. See also, Voliva v. Commissioner, 7 Cir., 36 F.2d 212.

The same rule applies to the debt owed the appellant by the Vereinsbank represented by the deposit of royalties due under the same agreement.

As the appellant was unable to show a deductible loss it had no cause of action regardless of the value of these debts and we do not reach the question of the sufficiency of the proof of value.

Judgment affirmed.