Estate of Frank D. Stranahan, Deceased, The Toledo Trust Company and Duane Stranahan, Co-executors v. Commissioner.
Estate of Stranahan v. Commissioner
Docket No. 1485-69.
United States Tax Court
T.C. Memo 1971-250; 1971 Tax Ct. Memo LEXIS 84; 30 T.C.M. (CCH) 1078; T.C.M. (RIA) 71250; September 28, 1971, Filed *84 Decedent-taxpayer expected to make a substantial interest payment in 1964 to the Internal Revenue Service and attempted to accelerate his income in that year to avoid losing the tax benefit of the interest deduction by entering into a purported assignment with his son in 1964 which provided, in part, the decedent, in consideration of $115,000 cash, assign all of the dividends to be declared and paid to him with respect to stock of Champion Spark Plug Company, owned by the assignor, until the assignee had received an aggregate amount of $122,820. Decedent's son issued his check dated December 22, 1964, in the sum of $115,000 payable to decedent and the check was deposited in decedent's bank account. On decedent's Federal income tax return filed for 1964, he reported income of $115,000 as being "Proceeds for sale of right to future dividends on Champion Spark Plug Co. stock." Respondent included the dividend income in decedent's taxable income for the year 1965 on the ground that the alleged assignment was devised for the sole purpose of avoiding the payment of taxes and was lacking in any business substance. Respondent issued a notice of deficiency for the taxable period ended December 31, 1965, whereas *85 decedent died on November 10, 1965; and the period stated in the notice included dividend income accruing subsequent to decedent's demise. Held, (1) that the notice of deficiency was a proper notice and hence the Court is not without jurisdiction; and (2) that decedent made an anticipatory assignment of undeclared dividends which was lacking in any legitimate business purpose and accordingly the dividends, when paid in 1965, were taxable to decedent in that year. 1079 James F. Kennedy, Jr., Duane Stranahan, Jr., and Gerald P. Moran, 1434 Natl. Bank Bldg., Toledo, Ohio, for the petitioners. John H. Menzel, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable period ended November 10, 1965, in the amount of $62,130.78. The principal issues presented for our consideration are (1) whether the Court has jurisdiction where the respondent issued a notice of deficiency for the taxable period ended December 31, 1965, whereas decedent-taxpayer died on November 10, 1965, and the period stated in the notice of deficiency included income accruing subsequent to decedent's death; and (2) whether the decedent is taxable on dividends paid in 1965 on the Champion Spark Plug Company stock he owned where, for the sole purpose of reducing his taxes, he made a purported assignment to his son in 1964 of a stated amount of future dividend income from that stock. The petitioners did not place in issue in the petition, and have thus conceded, adjustment (a) of the statutory *87 notice relating to the disallowance of a deduction claimed for "Payments of Income to Assignees." Respondent conceded that the dividends received during the taxable period involved herein ended November 10, 1965, were $40,050 * and that petitioners received taxable income in that amount rather than the amount ($56,070) set forth in the statutory notice. All of the facts have been stipulated and are so found and incorporated by this reference. Petitioners are the duly qualified and acting coexecutors of the Estate of Frank D. Stranahan, deceased, The Toledo Trust Company being an Ohio corporation with its principal office and legal residence at the time of the filing of the petition at Toledo, Ohio, and Duane Stranahan being an individual resident at the time of the filing of the petition at Perrysburg, Ohio. The income tax returns for the taxable period here involved and for the taxable year 1964 were timely filed with the district director of internal revenue, Cleveland, Ohio. For the year 1964 and the taxable period ended November 10, 1965, Frank D. Stranahan (who died on November 10, 1965, and is hereinafter referred to as the decedent) reported his income for Federal income *88 tax purposes on the cash basis of accounting. Decedent was an executive of the Champion Spark Plug Company, hereinafter sometimes referred to as Champion. The decedent anticipated during the years 1963 and 1964 the settlement of certain substantial matters involving several trusts created in 1932. A closing agreement involving the decedent as one of several taxpayers was approved by the Commissioner of Internal Revenue on March 11, 1964. This agreement represented the settlement of Federal estate, income, and gift taxes concerning the 1932 trusts. As a result of the closing agreement, the decedent was aware of the large interest payment he would make on these deficiencies in 1964 and after consultation with his advisors decided that it would be advantageous to accelerate his income in that year to avoid losing the tax benefit of the anticipated interest deduction. He was therefore advised to enter into the agreement described below. The decedent executed an agreement dated December 22, 1964, which provided, in pertinent part, as follows: ASSIGNMENT I, FRANK D. STRANAHAN, of Perrysburg, Ohio, my successors, heirs and assigns, hereinafter called "Assignor", in consideration *89 of the sum of One Hundred Fifteen Thousand ($115,000.00) Dollars in hand paid me by Duane Stranahan, hereinafter called the "Assignee", receipt of which is hereby acknowledged, do hereby sell, assign, set over and convey unto said Assignee, his heirs, successors and assigns, all of the dividends to be declared and paid with respect to 26,700 shares of the common stock of Champion Spark Plug Company owned by Assignor until the Assignee has received an aggregate amount of One Hundred Twenty Two Thousand Eight Hundred Twenty ($122,820.00) Dollars, that is, Four Dollars and Sixty Cents ($4.60) in cash dividends per share of said stock. Assignor shall endorse on the certificates of said shares of common stock of Champion Spark Plug Company the following notice of this assignment: "These shares are subject to an Assignment executed on December 22, 1964, of cash dividends declared and paid by Champion Spark Plug Company from the date of the Assignment until $4.60 per share have been received by the Assignee." 1080 Assignor shall notify the Transfer Agents for Champion Spark Plug Company of this Assignment and instruct them to pay over to the Assignee all cash dividends received *90 until $4.60 per share have been received by the Assignee. Decedent's son, Duane Stranahan, issued his check dated December 22, 1964, in the sum of $115,000 to the decedent drawn on the assignee's commercial account maintained with The Toledo Trust Company and his check was deposited in the decedent's account in The Toledo Trust Company on December 23, 1964. On January 6, 1965, the decedent notified the Morgan Guaranty Trust Company of New York, transfer agent for Champion, in the normal form prepared for that purpose by such company, that it should issue all future dividend checks to Duane Stranahan until the aggregate amount of $122,820 had been paid to him. No dividends were declared or paid by Champion between December 23, 1964, and January 6, 1965. During the taxable period here involved, that is, January 1, 1965, through November 10, 1965, the transfer agent for Champion, in accordance with its instructions, paid $56,070 in dividends with respect to such 26,700 shares directly to Duane in 1965. The amount of $16,020 of such dividends was paid to Duane on December 20, 1965, 40 days after the decedent's death. At the time of the alleged assignment of the aforementioned dividends, *91 it was anticipated that each share of stock would pay cash dividends of 50 cents per quarter. It was determined that with the current dividend payment rate at that time of 50 cents per share of stock per quarter, $115,000 represented the present value of the right to receive the assigned dividends of $4.60 per share discounted at the then prevailing interest rate of 5 percent. The Champion Spark Plug Company had a long and consistent record of paying dividends on its stock. The decedent and Duane were familiar with the dividend records of Champion both as shareholders and employees of the corporation. All of the payments of interest and of principal with respect to the tax deficiencies referred to hereinabove were made prior to December 23, 1964, and therefore no amount of the $115,000 received on December 22, 1964, for the purported assignment was actually used for that purpose. Duane reported all of the dividends which he received from the transfer agent for Champion as ordinary income subject to the offset of his basis of $115,000, resulting in a net amount of $7,820 of taxable income. During the year 1964, the decedent paid the balance of the deficiency resulting from *92 the closing agreement and also paid $754,815.72 to the Internal Revenue Service for interest due on the aforementioned deficiencies. On the Federal income tax return the decedent filed for the year 1964, he reported wages and salary of $12,000 and other income of $960,206.32, for a total of $1,080,206.32. Itemized deductions claimed on the return were in the amount of $1,076,256.18, which included a claimed deduction for interest paid to the Internal Revenue Service of $801,334.32. Included in the other income of $960,206.32 was income of $115,000, stated on the return as being "Proceeds from sale of right to future dividends on Champion Spark Plug Co. stock." Decedent also made substantial interest and principal payments on his tax liabilities in 1964 and likewise attempted to accelerate income in that year by the assignment of future income from his partnership interest in the Winwell Exploration Company. In the Federal income tax returns for 1964 and for the taxable period in 1965 ended November 10, 1965, the decedent claimed a deduction for "Payments of income to assignee under an agreement consummated in 1963 to sell future income of Winwell Partnerships." These claimed deductions *93 were disallowed in the notice of deficiency and the petitioners have not disputed this adjustment. Before ruling on the assignment issue, we must first determine the jurisdiction matter for without jurisdiction we would have no authority to rule on the purported assignment of the dividend income involved herein. It is elemental that neither respondent nor the taxpayer has the right to confer jurisdiction on the Tax Court where it does not otherwise exist. Mohawk Glover Corporation 2 B.T.A. 1247 (1925); Nathan Lerer, 52 T.C. 358 (1969). Preliminarily, we note that the parties have made no contention or motion to dismiss for want of jurisdiction and indeed request that the assignment issue be decided on its merits in the instant proceeding. There are two errors in the statutory notice of deficiency which are slightly 1081 beyond the scope of obvious misdesignations or typographical errors. These defects were (1) that it was issued for the taxable period ended December 31, 1965, whereas decedent died on November 10, 1965, and (2) during the period stated in *94 the notice subsequent to decedent's death, income accrued to his estate. The correct taxable period before us is the taxable period ended on the date of decedent's death; and the income tax return for the decedent for the year 1964 was filed for the correct taxable period. [1]
Ordinarily the Tax Court has no jurisdiction over any period other than that specifically covered by the deficiency notice. Gooding v. Commissioner, 310 F. 2d 501-502 (C.A. 4, 1962) affirming a Memorandum Opinion of this Court. If, however, the period on which the respondent's determination is based covers the taxpayer's final tax period (although the period in *95 the notice of deficiency is larger), it is a valid determination for that period. Harvey Coal Corporation, 12 T.C. 596 (1949). Similarly an error in the notice of deficiency as to the taxable period involved will be ignored where the taxpayer was not misled by the inconsistency between the first page and the appended computations in the statement which together made up the deficiency notice. Saint Paul Bottling Co. 34 T.C. 1137 (1960). See Commissioner v. Forest Glen C. Co., 98 F. 2d 968 (C.A. 7, 1938), certiorari denied 306 U.S. 639 (1938); Golding v. United States, an unreported case (N.D. Ill. 1965) 17 AFTR 2d 1510, 1512; and Paisner v. O'Connell 208 F. Supp. 397 (D.R.I. 1962). In the instant case the statutory notice erroneously refers to decedent-taxpayer's taxable year as ended on December 31, 1965. However, the petition herein states that the taxable period for which the notice of deficiency was issued was January 1, 1965, to November 10, 1965, and this allegation was admitted by respondent in his answer. Both parties are in accord that respondent's determination was, in fact, for this shorter *96 period. Decedent's return properly included income and deductions for the period ended November 10, 1965, the date terminating his taxable year. Section 443(a)(2), supra. The adjustments and computation of tax liability show that respondent erroneously referred to a taxable year ended December 31, 1965, and included income paid to decedent's estate after November 10, 1965, representing the last quarterly dividend of 60 cents a share on the Champion stock. It is stipulated that $16,020 of the Champion dividends was paid to Duane Stranahan on December 20, 1965, which was 40 days after decedent's demise. It is clear that although the period in the statutory notice is greater than the correct taxable period, the petitioners have not been misled or harmed and have waived all matters resulting from the mistakes in question. In our view, respondent's discovery that part of the dividend ($16,020) had not been paid to the "assignee" (son) prior to the close of the decedent's taxable year on November 10, 1965, and his concession of that part of the adjustment does not serve to oust the Tax Court of jurisdiction in the instant proceeding. Once we acquire jurisdiction, it is not lost through *97 respondent's concession at trial of part of one adjustment in the notice of deficiency. Under the circumstances, we conclude that it is proper to ignore the mistakes in the notice of deficiency and to regard it as a proper notice of deficiency for the purposes of this proceeding. Accordingly, we have jurisdiction of the determination herein. Saint Paul Bottling Co., supra. See Wilkens & Lange, 9 B.T.A. 1127 (1928). With respect to the $115,000 included as ordinary income on decedent's 1964 income tax return which was offset by part of the interest deduction, respondent determined that the decedent is taxable on the dividends paid in 1965 on the Champion stock he owned where, for the sole purpose of reducing his taxes in 1964, he made a purported assignment to his son in 1964 of future undeclared dividend income in the aggregate amount of $122,820 which he expected to be paid by the corporation. Essentially it is respondent's position that the dividend income involved herein is taxable to decedent in the year of receipt, 1965, on the ground that the purported assignment had no commercial substance for tax purposes, but was designed solely to circumvent the payment *98 of his proper taxes. Petitioners, in opposition, contend 1082 that decedent made a bona fide sale of his future dividend payments at a discounted value and that the lump sum consideration therefor received by decedent was taxable in 1964 as ordinary income. [2]
We recognize, of course, the general principle that a taxpayer is entitled to minimize the amount of what otherwise would be *99 his taxes or altogether avoid them by any legal means which the law permits. United States v. Isham, 84 U.S. 496, 506 (1873); Gregory v. Helvering 293 U.S. 465, 469 (1935); Commissioner v. Tower [46-1 USTC 9189], 327 U.S. 280, 288 (1946); and where the law is clear as to the tax consequences resulting from a particular course of action, such course of action will be given effect and governed by the clear provisions of the law even though it was followed for the primary purpose of tax avoidance. United States v. Cumberland Pub. Serv. Co., 338 U.S. 451 (1950). But when such is the primary motive of a particular transaction, that transaction should be closely scrutinized. If after considering all of the actualities, it is found to be but a subterfuge, it may then be disregarded for tax purposes. The incidence of taxation depends upon the substance of a transaction. "To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Commissioner v. Court Holding Co., 324 U.S. 331 (1945). *100 To this effect, see also Higgins v. Smith, 308 U.S. 473, 477, 478 (1940), where the Supreme Court, in determining whether a purported sale of securities was genuine, held that the Government is not obliged to acquiesce in the taxpayer's use of that form of doing business which is most advantageous to him, but may consider the actualities of the transaction involved, and upon determination that the form employed for carrying out the challenged tax event is not bona fide or is without commercial substance, may sustain or disregard the effect of the fiction as best serves the purpose of the tax statute. In considering the true nature of an undertaking, special scrutiny is necessary where the parties to the alleged transfer or assignment are members of the same family group. Helvering v. Clifford, 309 U.S. 331, 335 (1940); Commissioner v. Sunnen, 333 U.S. 591, 605 (1948). Also, we are aware that bookkeeping entries and income tax returns, although evidence of the facts which they purport to record, are not conclusive. Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918). *101 Included within the rights of a shareholder is the intangible right to share in the earnings of a corporation by way of dividends. Ford v. Snook, 205 App. Div. 194, 199 N.Y. Supp. 630, 632 (App. Div. 1923), affd. 240 N. Y. 624, 148 N.E. 732 (Ct. of App. 1925). It is also true that as between a shareholder and corporation, the shareholder has no right to share in profits of a corporation under normal circumstances until the directors in their discretion declare a dividend. Southern Pacific Co. v. Lowe, 247 U.S. 330, 338 (1918). Applying the foregoing principles to the facts before us, we are firmly convinced that the transaction in dispute was not a bona fide sale but merely an anticipatory assignment of the undeclared dividend income to an intermediary, decedent's son, for collection and was devoid of any substantive purpose other than tax avoidance. It has long been held that a taxpayer may not avoid his tax liability on income which he will earn by the *102 simple expedient of drawing up legal papers and assigning that income to others. Trousdale v. Commissioner, 219 F. 2d 563, 568 (C.A. 9, 1955), affirming 16 T.C. 1056, 1065 (1951). As we see it, this commuted form of an assignment did not essentially alter the substance of the transaction. In our judgment, decedent still received the dividend income in 1965, albeit in a more indirect fashion. In effect, the son-assignee merely acted as a conduit for transmitting to decedent his dividend income when actually paid in that year. See Alfred LeBlanc [Dec. 2519], 7 B.T.A. 256, 259 (1927), in which the taxpayer-father instructed the 1083 corporation in which he owned stock to pay all dividends thereon to his son for 3 years. Holding that in reality the son received no dividends, we stated that as between the son and the corporation, he had not even that "inchoate interest in earnings" which a stockholder has before dividends are declared, and that all of the attributes and incidents of a stockholder were continued in the taxpayer-father. Borrowing the simile from Helvering v. Horst, 311 U.S. 112 (1940), the 1964 assignment *103 was of the fruit of the tree and not the assignment of the tree itself. In other words, the decedent kept the "tree" and "assigned" part of the "fruit." By retaining the stock, the decedent controlled the source of the income and he directed its disposition in "assigning" or diverting it to his son. The alleged assignment did not result in any substantial change in the decedent's dominion and control over the property. The decedent by his assignment merely exercised his power to dispose of the income. Under these circumstances, there has been no effective separation of the "fruit" from the "tree" and the decedent is clearly taxable on the income when and as received by the son. Helvering v. Clifford, supra.A person cannot escape income which he earns and enjoys by "anticipatory arrangements however skillfully devised." Helvering v. Horst, supra. Petitioners point to Ohio law which recognizes the right of a shareholder to sell by contract his rights to future dividends without legal transfer of title to the stock. 12 Ohio Jur. 2d Corporations sec. 604 (728-729); *104 Lampkin v. Robinson, 10 Ohio N.P. (N.S.) 1 (Com. Pleas Ct. 1910) reversed in part 15 Ohio C.C.R. (N.S.) 126 (Cir. Ct. 1912), affirmed without discussion 88 Ohio St. 604 (1913). Be that as it may, it does not change the solution of the instant issue. The question here is whether there was in truth and in reality the sale or assignment of decedent's right to future dividend income. Trousdale v. Commissioner, supra, 569. It may be that the son, Duane, had acquired an independent right against the corporation (since the latter was notified of the private agreement) yet this was only because the decedent stockholder by anticipation had enjoyed and exercised his inchoate right to future dividends by transferring it. Decedent was, in effect, postdating his assignment to the several times when he was to receive dividends. Alfred LeBlanc, supra, 260. In Fred W. Warner, 5 B.T.A. 963 (1926), the taxpayer entered into a written agreement on July 2, 1920, with his wife in which for a specified sum of money and other valuable considerations he assigned all of his right, title, and interest in all dividend rights *105 or income payable or accruing on or in respect to his 12,500 shares of stock in a corporation and authorized and empowered the corporation to pay and deliver any and all dividends payable thereon to his wife. During 1921 and 1922, the corporation paid cash dividends to the assignee who reported it in her income tax return as dividends. The Court held that the cash dividends declared on this stock owned by the taxpayer and standing in his name on the corporation's books at the time of the declaration were income to him before being diverted to his wife through an assignment which purported to transfer the right o receive such dividends. In so holding, we held: Ordinary dividends are the distributions of earnings of a corporation to its stockholders. A corporation is not authorized to distribute earnings as dividends to those not stockholders, except under the authority and at the request of those entitled to receive them as stockholders. When dividends are declared the corporation then becomes indebted to its stockholders for the amount. United States v. Guinzburg, 278 Fed. 363, *106 and Plant v. Walsh, 280 Fed. 722. If the stockholder assigns his right to receive the dividend, the corporation by paying the dividend to the assignee satisfies an obligation to the stockholder. The right to receive it from the corporation accrues by virtue of the stock ownership. It is a stockholder's right although they are paid to others whose rights are derived from the stockholder's right to receive them. The situation is analogous to a case where A owes B a debt and authorizes C to pay money owing to him to satisfy the debt. In so far as A is concerned, he receives income when his debt to B is paid. Petitioners' reliance on Herman M. Rhodes, 43 B.T.A. 780 (1941), affirmed 131 F. 2d 50 (C.A. 6, 1942), is misplaced. That case dealt only with a declared dividend where the payment to the assignor occurred in the same year the dividend was received by the assignee. We do not believe such a factual pattern is involved in the case at bar. Also in support of their position, 1084 petitioners quote extensively from G.C.M. 24849, 1946-1 C.B. 66. We have carefully considered the G.C.M. and find it is inapposite. That G.C.M. deals *107 with in-oil payment rights which are considered to be property. Moreover, in the general discussion of anticipatory assignments of income, it is clear that the discussion assumes a transaction with substance and between strangers in interest. It, likewise, seems clear that insofar as the G.C.M. involves the assignment of dividends, the discussion is limited to a declared but unpaid dividend. This follows since those were the facts in Herman M. Rhodes, supra, cited in the G.C.M., and the G.C.M. refers to "the assignment of a right to a dividend." As discussed hereinabove, a shareholder, as in the instant case, has no right (except an inchoate right) to an undeclared dividend. In the light of the foregoing, we must conclude that the whole undertaking, though conducted in the form of an assignment of a property right, was in reality a loan to petitioner masquerading as a sale and so disguised lacked any business purpose; and, therefore, decedent realized taxable income in the year 1965 when the dividend was declared and paid. See George D. Seyburn, 51 T.C. 578, 583 (1969); J. A. Martin, et al., 56 T.C. - (1971). Decision will be entered under Rule 50. Footnotes
1. Section 441(b)(3) of the Code of 1954 which provides in part, the term "taxable year" means the period for which a return was made if a return was made for a period of less than 12 months. Also note section 443(a)(2)↩ providing for a return in a period of less than 12 months where the taxpayer was in existence less than the full 12-month period.
2. Petitioners do not urge that the purported sale of the future income should be taxed at capital gain rates but concede that in accordance with established precedent, the sale of a right to future income is itself ordinary income. Hort v. Commissioner, 313 U.S. 28 (1941) and Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958). See also Rhodes' Estate v. Commissioner, 131 F. 2d 50 (C.A. 6, 1942), affirming 43 B.T.A. 780↩ (1941), involving the sale and assignment of taxpayer's right to declared dividends which held the income to be ordinary in nature.